WEIHL *v.* ROBERTSON.

(*Knoxville.* October 19, 1896.)

1. DEED. *To fictitious grantee.*

A deed to a fictitious grantee conveys no title. (*Post, pp. 463, 464.*)

Cases cited: 12 Cal., 363; 83 N. Y., 265; 10 Pick., 364.

2. MORTGAGES AND DEEDS OF TRUST. *Grantor signing fictitious name.*

A trust deed executed in a fictitious name by the real owner of the property—the name used being the grantor's Christian name, and the same that he had used as the name of a grantee in a previous void deed made by him for the same property—is binding on the maker, when he intended the deed to take effect as security for bonds issued therewith, and transferred by him as security for his own debt. (*Post, pp. 464–466.*)

Cases cited and approved: 38 Cal., 44; 83 N. Y., 265.

3. FORGERY. *What is not.*

It is not forgery for the real owner of property to convey it, by a fictitious name, to secure bonds to be used in raising money for his benefit. (*Post, pp. 466, 467.*)

Code construed: § 6590 (S.); § 5492 (M. & V.); § 4718 (T. & S.).

4. EVIDENCE. *Exception to untenable, when.*

The admission of a note in evidence, without proof of its execution when it was admitted by the maker, who was a defendant, cannot be complained of on appeal by another party, as to whom the evidence was immaterial. (*Post, pp. 467, 468.*)

FROM HAMILTON.

Appeal from Chancery Court of Hamilton County. T. M. McCONNELL, Ch.

COOKE, SWANEY & COOKE and J. B. FRAZIER for Probasco.

ELDER & MILLIGAN and D. LUCK GRAYSON for Robertson.

P. B. MAYFIELD & SON for National Bank.

BEARD, J.   The records in these consolidated causes present a series of transactions which are certainly unique in character.   The defendant, C. P. Robertson, seems at one time to have been a man of some mercantile reputation in the city of Chattanooga.   Whether as the result of bad habits or not does not appear, but he finally passed out of business, and at the same time his condition was such that for awhile he was under treatment in a sanitarium or asylum.   On his release, his need of money being great, a plan, according to his statement, was submitted to him for raising enough to relieve this need.   The plan thus suggested was that Robertson, who was the owner of certain lots in Chattanooga, should bond these, a method which he was made to understand was very prevalent, and which, if adopted in this case, could work no injury to anyone. This plan commended itself to Robertson as possessing superior advantages, and, therefore, he set about carrying it out.   The details of the scheme were as follows:   Robertson had prepared a deed, which was executed by himself and wife, conveying these lots to one C. Phillips for an expressed con-

sideration of $7,500, of which $1,500 was acknowledged to be paid and the balance, evidenced by six bonds of $1,000 of the grantee, payable in five years, with interest coupons, payable semiannually, attached.   At the same time he had drafted a trust deed, by the terms of which C. Phillips conveyed this property to one Grayson as trustee, to secure the payment of these bonds and coupons, with the usual power of foreclosure by a public sale, in the event the grantee should fail to pay either the coupons or the principal of these bonds.   When prepared, Robertson took possession of this instrument and carried it with him to his home in Georgia, and, very late in the evening of October 17, 1892, he went to the office of one Head, a notary public of that State, taking this trust deed with him (with a certificate attached and already filled out), and told the notary that he desired to acknowledge it.   Knowing Robertson and suspecting no foul play, the officer took his acknowledgment, and, without any examination, attached his official signature and seal to the certificate.   It proved, however, in the end, that Robertson had affixed the name of C. Phillips, the assumed grantor to the trust deed, and the notary had appended his name and seal of office to a certificate which recited that "personally appeared C. Phillips, the within named bargainor, with whom I am personally acquainted, and who acknowledged that he executed the within instrument for the purposes therein con-

tained.'' Thus certified, and without anything to induce suspicion of the gross fraud perpetrated on him, this officer redelivered the instrument to Robertson, who, on the next day, caused it to be noted for registration in Hamilton County, where his deed to Phillips had already been registered. There was no such man as C. Phillips, this name being selected by the parties to this scheme because this was the baptismal or Christian name of Robertson.

Within a very short time thereafter, using these bonds as collateral security, Robertson obtained advances of money from various parties. From the complainants, Wiehl, Probasco & Co., he obtained a loan of $1,000, and gave one of these bonds, with coupon attached, as security; four he gave to the complainant, the Cleveland National Bank, to secure a debt of $2,400, and one to C. L. Hardwick & Co., of Dalton, Ga., as security for $1,000. Robertson defaulted on the interest coupons, and the beneficiaries, seeing that it was best to foreclose the trust deed, thereupon directed that this be done.

Accordingly, Mr. Grayson (entirely ignorant of the method adopted in the execution of these papers), as trustee, advertised the property for sale, in accordance with the terms of the trust deed, and at the sale made by him a third party, acting under the agreement already reached by the beneficiaries, bought the property in the name of Wiehl, of Wiehl, Probasco & Co., who was to hold it in trust for

the various bondholders. This sale, however, was not consummated.

Soon afterwards, Wiehl, Probasco & Co., being informed that the deed of trust and bonds were executed as has been before detailed, filed their bill in one of these consolidated causes, in which they charge that the deed from Robertson to Phillips was ineffectual to convey title, as there was no such grantee, and that the deed of trust was equally ineffectual in conveying title to Grayson, trustee, because the name of C. Phillips was forged to that instrument by Robertson. They allege that as the owner of Robertson's note, and by reason of his nonresidence, they have a right to treat these conveyances as of no force and value, and attach the lots in question and appropriate them, as far as might be necessary, to the payment of their debt. They especially repudiate the trust deed, and decline to take any benefit from it, or the sale made under it by Grayson as trustee. Subsequently the Cleveland National Bank filed its bill in the other of said causes, setting up its ownership of the $2,400 note of Robertson and its possession of four of these coupon bonds, and charging bad faith upon the part of Wiehl, Probasco & Co. in repudiating the sale made in the interest of all the beneficiaries of the trust deed, and insisting that the legal effect of the execution of this deed of trust to Grayson was that the title to this property passed out of Robertson to said trustee, although the maker used in its execution the false name of C. Phillips, and

that this trustee held it for the security of all the holders of said bonds and coupons, save alone the bond of Wiehl, Probasco & Co., which it was insisted could not participate, because of the renunciation of all interest in the trust deed by its owner. Among other things, this bill prayed that the attachment issued at the instance of Wiehl, Probasco & Co. be vacated, and that said deed of trust be set up and established and that the lots covered by it be sold under proper decree in the interest of such bondholders as had not renounced this trust.

All necessary parties were made defendants to these respective bills. The Chancellor, on the hearing of these causes, dismissed the bill of Wiehl, Probasco & Co., and decreed that the effect of the deed of trust to Grayson, trustee, was to vest the title to this property for the benefit of all the bondholders, directed a foreclosure sale for their benefit, and, in effect, declined to exclude Wiehl, Probasco & Co. from a participation in the proceeds of the trust property. From this decree Wiehl, Probasco & Co. alone appeal. The Court of Chancery Appeals have affirmed the Chancellor's decree, and the case is now before us by appeal from this decree of affirmance.

The theory of the bill of Wiehl, Probasco & Co., as has been stated, is, that the grant from Robertson and wife to C. Phillips, there being no such grantee, was waste paper, leaving the title in the grantors, and that the trust deed from C. Phillips to Grayson, trustee, being a forgery, communicated

no title. There can be no doubt but that this contention is sound, so far as the effect of the deed from Robertson and wife to the fictitious grantee, Phillips, is concerned. The definition of a deed that it "is a writing sealed and delivered by the parties" (Co. Litt., 171; 2 Bl. Com., 295), makes it essential, for an instrument to operate as such, that there should be both a grantor and a grantee. So that a conveyance uncertain as to the person intended as grantee—as, for instance, where a grant is made to a "neighborhood" (*Thomas* v. *Marshfield*, 10 Pick., 364), or to one who is dead at the time of its execution (*Hunter* v. *Watson*, 12 Cal., 363), or to a person purely fictitious (*David* v. *Williamsburg*, 83 N. Y., 265)—is inoperative and void.

But we do not agree with appellant's counsel in their insistence that the deed of trust which Robertson executed in the name of C. Phillips, was a nullity. On the contrary, we are satisfied, on reason and authority, that it as effectually conveyed the title to this property to Grayson, trustee, as if Robertson had used his own name in the conveyance. We think there can be no doubt but that if the grantor had used, in the execution of this deed, his surname simply, that, his identity being established, it would have been operative to convey title; and we think it equally free from doubt, that, using his Christian name, as the grantor did, and intending it to take effect as a perfect deed, and delivering it as such, that it will be taken as conclusively binding upon

him. The question in a case like this, is, did the grantor intend to bind himself by the instrument, and is his indentity free from uncertainty? 1 Devlin on Deeds, Secs. 154, 185.

Mr. Devlin, in his work on Deeds, Vol. I., Sec. 191, states the law to be that "a patent issued to a person under an assumed name is not void, and a conveyance by such person under his assumed name will transfer title." And again, in Sec. 188, the same author says: "Between the parties, a convey-ance of property by the owner, by any name, will transfer the title. And, when executed in a differ-ent name from that in which he acquired title, it will, when recorded, operate as constructive notice of the transfer of title, and will be entitled to prece-dence over a deed to the same land executed in the name by which title to it was acquired, but subse-quently recorded," citing to this proposition *Fallen* v. *Kehoe*, 38 Cal., 44.

This exact question has been carefully, and on authority, considered by the Supreme Court of New York, in *David* v. *Williamsburg Fire Ins. Co.*, *su-pra*, and the same conclusion was reached there as is announced by Mr. Devlin. In that case Henry J. David conveyed real and personal property to Marx David, a fictitious person, and then, in the name of this fictitious grantee, conveyed the same property to the plaintiff in the action, who under-took, in her own name, to protect it with insurance policies. It was subsequently burned, and the in-

13 P—30

surance company, discovering the character of these conveyances, declined to pay the loss, upon the ground that the mythical character of "Marx David" had prevented title from passing into plaintiff. The Court said: "The conveyances to Marx David were undoubtedly wholly invalid and inoperative, as there was no such person to take title; and, if nothing more had been done, the title to the property would have remained in Henry J. David. But the title still remaining in him, he executed the bills of sale and the deed to the plaintiff, using or adopting for that purpose the name of Marx David. The papers thus executed were undoubtedly valid as to him. *Pro hac vice*, it is his name."

But appellants earnestly insist that, however this may be where a party, without fraud or wrongdoing, assumes a name other than his own in making a contract, yet in this case Robertson, in using the name of C. Phillips, was guilty of the crime of forgery; that no contract can spring from a felony. Forgery, at common law and under our statute, is the fraudulent making or alteration of any writing to the prejudice of another's rights. 1 Whar. Cr. L., Sec. 653; Code (M. & V.), § 5492. While this transaction was highly discreditable, yet we do not think it falls within this definition. Whose rights were prejudiced by the assumption of this name? Not those of C. Phillips, because he was a mythical personage. Nor were those of Mr. Grayson, the trustee, for he had none in the property

until this instrument was executed, and then there occurred, by the use of this assumed name, exactly what would have happened if the grantor had used his true name—that is, he acquired title to the property. Nor were the holders of these bonds prejudiced, because they had no interest, either in the property or in these bonds, at the time the trust deed was executed, and it was then the crime of forgery was committed, if at all. Whatever may have been the offense, if any, committed by Robertson in afterwards obtaining money on those bonds, as executed by Phillips, at any rate it could not make that forgery which was not so at the time the trust deed was made. We do not think, under the facts disclosed, that this act was felonious. As Mr. Wharton, in Vol. I., Sec. 660, of his work on Criminal Law, says, it is not "forgery when the offense is not the assumption of the name of a supposed third person, but the adoption of an alias or alternative name of the party charged." But it is insisted that this case must, at all events, be reversed, as the Court below permitted, on the trial, the Cleveland National Bank, without proof of its execution, to read the note of Robertson held by it, over the objection of appellants.

We do not think this objection was well taken. It is true the bill of complainant bank alleged that it was the owner of a note of Robertson's for $2,500 and that this averment was denied by the defendants, Wiehl, Probasco & Co., but it was admitted to be

true by Robertson, the maker, against whom they sought a personal decree. Appellants were in nowise interested in this. As no relief was asked against them on the note, it was immaterial to them whether complainant did or did not have this note, or whether it was duly executed, as they had no controversy with the bank over it. The question that appellants were interested in was whether the complainant bank had the four bonds claimed by it, and, as such holder, could insist upon treating the property as a trust fund for their security. If it held these, it was unimportant to appellants whether they were held as collateral to a note or as absolute owner.

The Cleveland National Bank did not appeal, and we therefore cannot consider the question whether, having repudiated this trust deed, the Chancellor was in error in letting Wiehl, Probasco & Co. in to participate in this trust fund.

Affirmed.