REEVE v. NORTH CAROLINA LAND & TIMBER CO. et al.

(Circuit Court of Appeals, Sixth Circuit. December 5, 1905.)

No. 1,387.

1. PUBLIC LANDS—GRANT OF STATE LANDS—VALIDITY UNDER TENNESSEE STATUTE.

Under the statutes of Tennessee governing grants of state lands, as construed by its Supreme Court, a valid entry is not essential to a valid grant, and the older of two conflicting grants, each based on a void entry, passes the state's title.

2. EXECUTION—VALIDITY OF SALE—PRESUMPTION OF REGULARITY.

That one assumed to be an officer, and made a levy and return under an execution directed only to a lawful officer, is sufficient, on collateral attack, to raise a presumption that he was such officer, although the fact is not stated in his return.

3. SAME.

On a collateral attack upon an execution sale, made 26 years after the execution of a trust deed on the property by the owner, the presumption is that the debt secured by the deed was satisfied and that the sale passed a good title.

4. EXECUTORS—POWERS—CONVEYANCE OF PROPERTY.

An executor, having power under the will to sell and convey any part of the testator's property, had authority to direct the making of a sheriff's deed, to which the testator was entitled, to a third party, who had acquired the equitable title, notwithstanding the fact that the remainder of the estate had been closed, where he had not resigned or been discharged.

5. EXECUTION—VALIDITY OF DEED—POWER OF SUCCEEDING SHERIFF.

Under Shannon's Code Tenn. § 4783, which provides that a sheriff who makes a sale of lands may make a deed to the purchaser, or any one succeeding to his rights, "at any time, either within or after the expiration of the two years allowed for redemption," and section 4785, which authorizes a sheriff to execute deeds for lands sold by a former sheriff, without any limitation as to time, the mere lapse of time does not affect the validity of such a deed made by a subsequent sheriff.

6. EQUITY—PROOF OF TITLE—RIGHT TO BRING IN CURATIVE DEED BY SUPPLEMENTAL BILL.

Where plaintiff had an inchoate title to land in suit, but which was imperfect because of the invalidity of a sheriff's deed, it was not error to permit the bringing forward by supplemental bill of a curative deed executed pending the suit.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

This cause came on to be heard upon April 13, 1905. An opinion reversing the decree of the Circuit Court upon the ground of the invalidity of the complainant's grant was filed May 2, 1905. The ground upon which we proceeded,

as well as the facts of the case, is fully set forth in our former opinion, which was as follows:

"Bill to restrain trespass a tract of wild mountain land, valuable only for its timber, and to cancel the grant and deeds under which the defendants claim in so far as same conflict with the grant and deeds under which the complainant asserts title to the land upon which trespasses are being committed. There was a decree for the complainant, and the defendant, M. P. Reeve, has appealed.

"LURTON, Circuit Judge, delivered the opinion of the court.

"The complainant deraigns title to the land in dispute from a grant to John Burgner, for 5,000 acres, dated November 29, 1841. The defendant deraigned title from a grant to Richard West, for 1,900 acres, dated October 3, 1843. Both grants are from the state of Tennessee. Neither party has had any such possession as to perfect a title under statute of limitations. The West grant laps upon the older Burgner grant. To what extent does not appear. The question made by the issues and decided by the court below was the single question of superiority of title. The Burgner grant is the oldest, and, in the absence of both the Burgner and West entries, is the superior title if a valid grant. The contention is that the grant to Burgner is void because issued without any authority of law.

"That grant, upon its face, recites that it issued upon an entry dated November 29, 1838. By an act passed November 28, 1839, it was provided that entries theretofore made might be surveyed at any time prior to September 1, 1841, and 'the further time of two years, from and after the passage of this act, to have such surveys granted;' and that 'if such surveys shall not be made and grants obtained thereon, as provided in this act, such entries and surveys, as the case may be, shall be null and void as against subsequent entries.' The time within which a grant might issue under this extension act expired November 28, 1841. Complainant's grant issued November 29, 1841, one day after the expiration of the law. The West entry was, at the date of this hiatus, an existing entry junior to that of Burgner, and upon it the West grant issued subsequent to this hiatus and junior to the Burgner grant. The fact that the Burgner grant issued upon an entry which, by the express terms of the act of 1839, was null and void, is apparent from the date of the entry recited in the grant itself. November 30, 1841, another extension act was passed, which extended the time within which all entries theretofore made might be carried into grants. But the Burgner grant can obtain no benefit from this act because it issued one day after the expiration of the act of 1839, and one day before the act of 1841 was passed.

"We need not stop to consider what would have been the effect if Burgner's grant had not issued until after the later extension act of 1841 had passed. That it would have resuscitated his entry and furnished the foundation for a grant, in the absence of any intervening rights in favor of a younger enterer, may be conceded. Blevins v. Crew, 3 Sneed, 154; Williamson v. Throop, 11 Humph. 265; Tipton v. Sanders, 2 Head, 690; Henegar v. Matthews, 88 Tenn. 132, 14 S. W. 554; Sheafer v. Mitchell, 109 Tenn. 181, 71 S. W. 86. The plaintiff's grant can obtain no support from subsequent extension acts, but must stand or fall upon the question of the power of the state's officials to issue a grant upon an entry which, under the law, was null and void. As this is a collateral attack, it will be of no avail unless the Burgner grant is void and not merely voidable by a direct proceeding. Fowler v. Nixon, 7 Heisk. 725; Curle v. Barrel, 2 Sneed, 66. A grant of the vacant land of Tennessee must have its origin in a valid entry, and a grant which has no other basis than a void entry is void, wherever impeached, if the facts are apparent upon the face of the grant, or otherwise appear by record evidence of like dignity. Jackson v. Honeycut, 1 Overt. (Tenn.) 31; Cobb's Heirs v. Conway's Heirs, 3 Hayw. (Tenn.) 21; McLemore v. Wright, 2 Yerg. 326; Polk v Wendell, 5 Wheat. 293, 5 L. Ed. 92; Crutchfield v. Hammock, 4 Humph. 203; Roach v. Boyd, 1 Sneed, 134; Woodfolk's Lessee v. Nall, 2 Sneed, 674.

"In Crutchfield v. Hammock, cited above, vacant lands lying in one surveyor district were entered in another of which they constituted no part. A

grant was nevertheless issued. The trial court instructed the jury that if the lands included in the plaintiff's grant did not constitute a part of the district in which they were entered, that the entry and grant were void. In the Supreme Court it was contended that inasmuch as the surveyor of the district of entry had actually included the lands in question in his district and placed it down upon the plans thereof, that the plaintiff had a right to enter it in that office, and that the state having issued a grant therefor, all persons were precluded from going behind the grant. To this the court replied: 'This argument cannot be sustained. Ever since the case of Polk's Lessee v. Wendell and others, decided by the Supreme Court of the United States [5 L. Ed. 92] and [Polk's Lessee v. Wendell], reported in 2 Tenn. 433 [Fed. Cas. No. 11,251], it has been held that entries and grants are void, and may be resisted in a trial in ejectments whenever there is want of property in the grantor, or want of power in the officers appointed by the Governor to receive the entries or issue the grants. The principles of this decision have been recognized by the Supreme Court of this state in the cases of Fentress' Lessee v. Western, decided at Charlotte in 1820, not reported, and in the case of McLemore's Lessee v. Wright, decided at Reynoldsburgh in 1829, and reported in 2 Yerg. 326. In the case now under consideration, the lands in dispute, constituting a part of the Hiawassee district, were not included by the lines of the Ocoee district. The surveyor, then, in extending the lines so as to embrace it, was acting out of the sphere of the authority invested in him, and his act was void. Being void, the act cannot be construed to have made these lands a part of the Ocoee district. Not being such, the entry taker had no power to receive entries therefor, as his power was limited to the reception of entries of land in the Ocoee district; he having no power to issue grants except· upon valid entries. The lessor of the plaintiff, then, had no title to the premises in dispute, and the judgment of the circuit court must be affirmed.' This case was followed in Roach v. Boyd, cited above, where it was held that an entry made in an entry office which had been closed was a nullity and 'that the grant founded upon it was void.'

"Crutchfield v. Hammock and Roach v. Boyd were affirmed and applied in Woodfolk's Lessee v. Nall, cited above. Woodfolk's Lessee v. Nall was an action of ejectment. Each party claimed the land in dispute under conflicting grants. The plaintiff's entry and grant were junior to the entry and grant of the defendant. But plaintiff claimed that, although his entry and grant were junior, they constituted the only valid entry and grant, and that defendant's grant was void. This claim was rested upon the fact that at the date of defendant's entry there was an interval of a short time during which there was no authority of law for making an entry within that portion of the state where this land was, and that the law closing the entry office had required all claims to be presented and entries made thereon on or by a date named, or be 'forever thereafter barred.' The office was again opened. But during the interval defendant's entry was made and spread upon the entry book, and so remained after the office was again opened. Defendant's grant issued after the reopening of the office. The court, after holding that the entry did not become a good entry by remaining upon the entry taker's book, having been originally placed there in violation of official duty, and that 'nothing short of an express legislative enactment could have had the effect of legalizing the pretended entry, or making it operative for any purpose,' said: 'It is clear, therefore, that the entry in question is utterly void; and of necessity the grant founded upon it must be held void likewise. The case before us is free from all the supposed difficulties that have embarrassed the question in regard to the jurisdiction of a court of law to declare a grant void. It clearly falls within a principle long recognized in our jurisprudence as an exception to the general rule upon this subject. The case of an entry attempted to be made without or against the authority of positive law is obviously distinguishable from those cases where the entries were authorized by law, but errors or inequalities intervene in the course of proceeding. See Crutchfield v. Hammock, 4 Humph. 203; Roach v. Boyd, 1 Sneed, 135.'

"The cases of Craig's Lessee v. Vance, 1 Overt. 183; Wood v. Elledge, 11 Heisk, 611; Webb v. Haley, 7 Baxt. 602, 603, and Berry v. Wagner, 13 Lea,

594, 598, have been cited as holding that an entry is not essential to the issuance or validity of grant. Craig's Lessee v. Vance seems to have been an obiter by a single judge at nisi prius. But if Judge Overton had in mind grants upon military warrants prior to the act of April 12, 1784, he was right, for it was not until the act last mentioned that there was any provision of law requiring an entry book in respect of locations under military warrants. It was, before that act, 'agreeable to law' that the surveyor should indorse upon the back of the warrant the location made by the holder, and for a grant to issue upon the warrant and location so made. After the act of April, 1784, entry takers were appointed and entry books provided, and all entries required to be made in the proper district. The history of the matter may be read in Lester v. Craig's Trustee, Cooke (Tenn.) 482, 484. Wood v. Elledge presented only the question of whether the plaintiff's younger grant could be carried back to the date of his entry, which was older than that of the defendant. Both entries were in evidence. The oral evidence tended to show that the objects called for in plaintiff's entry could not be located, while the localities in defendant's entry were notorious. In this state of the case, plaintiff's grant could not by relation go back to such an entry, and his title was therefore only of the date of his grant. The case is one under the well-settled Tennessee doctrine that a grant based upon a special entry relates to the date of its entry, and will override an older grant upon a younger entry. Anderson v. Cannon, Cooke (Tenn.) 27, 31; Parrish v. Cummins, 11 Humph. 297; Bleidorn v. Pilot Mountain Co., 89 Tenn. 169, 204, 15 S. W. 737. Webb v. Haley has no bearing whatever upon the question of the necessity of a valid entry.

"The book of an entry taker is a record, and copies taken from it constitute record evidence. The entry taker must furnish the surveyor with a copy of his record on which he makes his survey. This entry and the survey are furnished to the register or Secretary of State and constitute the authority for issuing a grant. Sampson v. Bone, 4 Heisk. 702, 704. Such an entry constitutes an incipient or equitable right to the land, and constitutes the state's voluntary agreement to grant the land if the enterer shall apply for a grant within the time required by law. If an entry of vacant lands made in the wrong surveyor's district, or in a closed entry taker's office, or of land not included within any surveyor's district, is a void entry and a grant based thereon void, it is because a lawful entry is the only authority of law for the issuance of a grant. We can but conclude, from the cases we have cited above, that the state officials issuing the Burgner grant did so without any authority of law. It was not a case of the exercise of judgment or discretion upon any question of law or fact submitted to their decision by the law. It was not a case of vague, indefinite, or voidable entry, but a plain case of an entry which had expired, an entry which by plain terms of the law was null and void. It is not distinguishable in principle from McLemore v. Wright, 2 Yerg. 326; Polk v. Wendell, 5 Wheat. 293, 5 L. Ed. 92; Crutchfield v. Hammock, 4 Humph. 203; Roach v. Boyd, 1 Sneed, 134 and Woodfolk's Lessee v. Nall, 2 Sneed, 674.

"The authority of the Secretary of State and Governor to sign and deliver the state's grant is dependent upon the enterer's application within the time limited by law for the issuance of a grant upon the entry. A grant after an entry has expired is an act beyond the scope of the power conferred by law and an absolute nullity. Such an entry may be revived by an act of legislation which does not affect the vested right of another. But in the case under consideration there had been no resuscitation of the nullified entry of Burgner when he applied for and obtained his grant. The fact that an act was subsequently passed extending the time within which he might obtain a grant is of no consequence, aside from the junior entry of West, because he did not obtain such grant during the currency of the extended law. The case of Woodfolk v. Nall, 2 Sneed, 674, 675, presented much such a question. There an entry made and recorded in an entry office which had been temporarily closed by law was held not to be validated from date of reopening of the office.

"A grant or a patent for vacant public land, though bearing the great seal, is nevertheless a ministerial act, and if the land purporting to be granted. was not in fact the property of the state, or subject to grant under existing law, or if the officials issuing it were without the authority of law, the grant is void and not merely voidable, and is subject to impeachment whenever offered in evidence in an action involving title. This is a well-settled general rule both in the courts of Tennessee in respect of the impeachment of grants of vacant public lands and of the United States when the validity of their patents is collaterally questioned. McLemore v. Wright, 2 Yerg. 326, 328; Polk v. Wendal. 9 Cranch, 87, 3 L. Ed. 665, and Polk v. Wendell, 5 Wheat. 293, 5 L. Ed. 92, being cases arising under Tennessee grants. See Crutchfield v. Hammock, 4 Humph. 203; Roach v. Boyd, 1 Sneed, 134; Woodfolk's Lessee v. Nall, 2 Sneed, 674; Curle v. Barrel, 2 Sneed, 63; Patterson v. Winn, 11 Wheat. 380, 6 L. Ed. 500; Smelting Co. v. Kemp, 104 U. S. 636, 641, 26 L. Ed. 875; Wright v. Roseberry, 121 U. S. 488, 519, 7 Sup. Ct. 985, 30 L. Ed. 1039; Doolan v. Carr, 125 U. S. 618, 625, 8 Sup. Ct. 1228, 31 L. Ed. 844; Knight v. U. S. Land Association, 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974; and Stockley v. Cissna, 119 Fed. 814, 56 C. C. A. 324, a decision by this court, where a grant of land, in form regular, was held void, because not authorized by the law under which it purported to be made.

"Since the case of Polk's Lessee v. Wendal, 9 Cranch, 87, 3 L. Ed. 665, a case in which the circumstances under which a North Carolina or Tennessee grant might be collaterally impeached, there is an unbroken line of Tennessee authority holding, to quote from Curle v. Barrel, cited above, that a grant is to be considered void and open to collateral attack in a court of law, 'when the state had no property in the land granted, or when the officers had no power to receive the entry and issue the grant.'

"In Doolan v. Carr, cited above, the principle prevailing in Tennessee and in the courts of the United States is thus stated by Justice Miller: 'There is no question as to the principle that where the officers of the government have issued a patent in due form of law, which on its face is sufficient to convey the title to the land described in it, such patent is to be treated as valid in actions at law, as distinguished from suits in equity; subject, however, at all times to the inquiry whether such officers had the lawful authority to make a conveyance of the title. But if those officers acted without authority; if the land which they purported to convey had never been within their control, or had been withdrawn from that control at the time they undertook to exercise such authority, then their act was void—void for want of power in them to act on the subject-matter of the patent, not merely voidable, in which latter case, if the circumstances justified such a decree, a direct proceeding, with proper averments and evidence, would be required to establish that it was voidable, and should therefore be avoided. The distinction is a manifest one, although the circumstances that enter into it are not always easily defined. It is nevertheless a clear distinction, established by law, and it has been often asserted in this court, that even a patent from the government of the United States, issued with all the forms of law, may be shown to be void by extrinsic evidence, if it be such evidence as by its nature is capable of showing a want of authority for its issue.' The learned justice, after referring to Polk's Lessee v. Wendal, 9 Cranch, 87, 3 L. Ed. 665, as the earliest case where the subject received full consideration, said of that case, that: 'In that case, the court held that it could be shown as a defense to the patent, that the entries on which it was granted were never made, and that the warrants were forgeries; in which case no right accrued under the act of 1777, and, no purchase of the land having been made from the state, the grant was void by the express words of the law, and that in rejecting the testimony on this point the Circuit Court erred. The judgment was, therefore, reversed.'

"In the case at bar the plaintiff's grant recites that it was issued in consideration of an entry made on November 29, 1838. The grant itself was issued November 29, 1841. The fact impeaching this grant is therefore apparent on its face, for the entry received was null and void. The ministerial act of issuing the grant was therefore wholly unauthorized by law. To quote from Judge Catron in McLemore v. Wright, 2 Yerg. 326, 328: 'It was by

powers conferred, not powers withholden, that they were authorized to receive entries and issue grants.' We have examined the cases, cited by the counsel for appellees, of Conn's Lessee v. Haislip, 1 Swan, 30; Parker v. Claiborne, 2 Swan, 565; Webb v. Haley, 7 Baxt. 600; Berry v. Wagner, 13 Lea, 594. They are cases of mere irregularities or mistakes of fact made by officials whose duty it was to act, making a grant voidable only, and in no wise conflict with the conclusion we have reached, that the grant to Burgner was void and not merely voidable, and therefore subject to collateral impeachment.

"Decree reversed. As complainant has failed to deraign a superior title the bill must be dismissed in so far as any relief is sought against defendants."

We are now asked to reverse our opinion that a grant is invalid which issued during an hiatus between two extension acts, for the reason that this conclusion conflicts with the last adjudication upon this subject by the Supreme Court of Tennessee. In support of this insistence, counsel file a manuscript copy of an opinion of the Tennessee Supreme Court in the case of Sampson Heirs v. Chester Heirs, 91 S. W. 43. This opinion is as follows:

"Sampson Heirs v. Chester Heirs. Chancery Docket, Dyer County.

"This is an action of ejectment to try title to vacant land. There was a demurrer in the court below which was sustained, and complainants were denied any relief, and have appealed. The court is unanimously of opinion that the decree of the chancellor should be affirmed, and it is done with costs. While the several members of the court arrive at the same result, they do so upon somewhat different grounds. The majority is of opinion that the entries upon which both the complainants' and defendants' grants are based are invalid and void; the defendants' entries, because made at a date when there was no hiatus and no authority under the law to make such entries; and the complainants' are invalid, because the complainants did not, within the life of any extension act, perfect the same by a grant. The matter, therefore, turns upon which has the older grant, the complainants or defendants, without regard to the entries, and there can be no question but that the defendants have the older grant. It is held that an entry is not indispensably necessary to the validity of a grant, Craig's Lessee v. Vance, 1 Overt. 182. The conflict being then narrowed down between two grants, neither supported by a live and valid entry, the court will give effect to the older, upon the theory that it passed all the right of the state to the grantees in that grant, and a subsequent grant would be of no avail to pass any title. The decree of the court below is affirmed, with costs."

Mr. Justice Wilkes agreed with the conclusion, but rested his assent upon another ground, and filed a separate opinion, which reads as follows:

"This is an action of ejectment brought by the heirs of Isaac Sampson against the heirs of Robt. I. Chester. The complainants claim 1,316⅝ acres of land under seven separate grants as follows: No. 17,303, dated July 17, 1900, based upon entry No. 113, which was an extension entry for 199 acres made on the 20th day of July, 1840, by virtue of a one-acre entry, No. 117, in the name of Jno. W. Rogers. The said entry was assigned to said Sampson and surveyed for him on the 25th day of November, 1841. 17,304, dated July 17, 1900, based upon an extension entry, No. 118, July 20, 1840, in the name of Geo. C. Hatch, for 199 acres by virtue of a one-acre entry. This was assigned to said Sampson and surveyed for him November 25, 1841. 17,305, dated July 17, 1900, based upon an extension entry for 198 acres, May 23, 1840, made in the name of Lucy W. North, by virtue of a two-acre entry. This was assigned to said Sampson and surveyed for him November 25, 1841. 17,306, dated July 17, 1900, based upon an extension entry for 198 acres made in the name of Jas. Smith on May 23, 1840, by virtue of a two-acre entry. This was assigned to said Sampson and surveyed for him November 26, 1841. 17,308, dated July 17, 1900, based upon an extension entry for 198 acres, made in the name of Jacob C. Fisher, on the 23rd day of May, 1840, by virtue of a two-acre entry. This was assigned to said Sampson and surveyed for him on the 26th day of November, 1841. 17,309, dated July 17, 1900, based on an extension entry

for 140 5-8 acres, made in the name of Etson Eaves· on the 20th day of July, 1840, by virtue of a one-acre entry. This was assigned to said Sampson and surveyed for him November 28, 1841. 17,310, dated July 17, 1900, based upon an extension entry for 184 acres made by Enoch P. Earle, December 2, 1841, by virtue of a one-acre entry. This was assigned to said Sampson and surveyed for him on December 6, 1841. All these several entries were made by the original enterers under and by virtue of Occupant Law 1840, p. 144,· c. 62 (Whitney's Land Law, p. 280). The defendants in this case, who are the heirs of the late Robert I. Chester and those who hold under them, claim the said land covered by the above grants under and by virtue of a grant for 2,000 acres, No. 5,119, dated July 22, 1846, based on entry No. 450, dated June 2, 1843, of land issued to the said Robert I. Chester, as assignee of Samuel J. Hayes.

"The bill shows that these are wild bottom lands and they have never been actually occupied, and avers that the complainants, having the older entries, though the younger grant, are entitled to recover said land. The bill charges further by way of amendment that the title which was obtained by the said Robert I. Chester on his junior entries inured to the benefit of the original entries, and that he and his heirs under him hold the said title in trust for the benefit of the holders of the original enterers or their assigns, and prays that the title be divested out of them and vested in the complainants.

"The defendants interposed five grounds of demurrer to the bill, the first three of which were overruled by the court, and there was no appeal. The fourth and fifth, which were sustained by the court, are as follows: '(4) That said bill shows on its face that the complainants are seeking to eject the defendants from lands, when the title of the defendants thereto and therein is superior to that of complainants, in that the grants exhibited and relied upon by the complainants were issued without authority of law, the bill showing that the grants were issued in July, 1900, to the complainants as the heirs of Isaac Sampson, deceased, on extension entries made in 1840. (5) That the said bill shows on its face that the ancestor of the complainants, Isaac Sampson, had abandoned the entries on which said grants, exhibited by the complainants are based, and took no steps to perfect the title in said lands in his lifetime.' From the action of the court sustaining the above grounds of demurrer and dismissing complainants' bill, complainants appealed, and assign the following errors: First. The court erred in holding that the defendants had the better title to the land sued for. Second. The court erred in holding that the entries on which complainant's grants are based had been abandoned by the complainants. Third. The court erred in holding that complainants' grants were issued without authority of law.

"The several extension entries in this case were based upon a small entry which it appears, but not very definitely, was founded upon a warrant from the state of North Carolina, and were made under the provisions of Acts 1840, p. 144, c. 62, § 2, compiled in Whitney's Land Law on page 280, and is as follows: 'Where any person is now or hereafter may become the owner by deed, grant, entry, or occupant reservation of a less quantity than 200 acres of land, the owner or owners thereof may enlarge the same to any quantity not exceeding 200 acres, provided always that they do not interfere with any occupant settler, and that no person shall be entitled to the benefit of this section who may be, at the time he may wish to make such enlargement, the owner of 200 acres of land.' The title of this act recites that 'it is for the benefit of the occupant settlers south and west of the congressional reservation line—and in that limit the lands in controversy lie.' Complainants, having the older entries though the younger grants, must prevail, unless it appears that their entries were abandoned, or the grants to them were unauthorized, unwarranted, and invalid. It is said that grants to the complainants having issued in 1900, the court cannot look behind them, but must accept them as final and conclusive evidence of their validity and of complainants' rights thereunder. But it is evident that the mere issuance of a grant by the Governor and Secretary of State is not conclusive of its validity in every instance. And it has been held that entries and grants may be questioned and

declared void wherever there is a want of property in the state at the time they issue, as, when a grant issues for land already validly granted, or, when there is a want of power in the officers appointed by the government to receive the entries or to issue the grants apparent on the face of the papers, or as a matter of law. Polk's Lessee v. Windel, 2 Overt. 433, Fed. Cas. No. 11,251; McLemore v. Wright, 2 Yerg. 326; Crutchfield v. Hammock, 4 Humph. 204; Roach v. Boyd, 1 Sneed. 134; Curle v. Barrel, 2 Sneed, 65; Woodfolk's Lessee v. Nall, 2 Sneed, 678; Fowler v. Nixon, 7 Heisk. 725; Moss v. Gibbs, 10 Heisk. 284; Galloway v. Hopkins, 11 Heisk. 353. It is a rule well settled and not now questioned 'that a complainant in ejectment must recover, if at all, upon the strength and perfectness of his own title, and not upon any supposed defect in that of the defendants. Garrett v. Belmont Land Co., 94 Tenn. 479. 29 S. W. 726; King v. Coleman, 98 Tenn. 570, 40 S. W. 1082; Lowry v. Whitehead, 103 Tenn. 397, 53 S. W. 731. And it is from this standpoint that we proceed to examine the present controversy.

"It is insisted that complainants' title in this case is defective because their entries were abandoned before grants issued, and that this must be presumed from great lapse of time, and because there was no power in the officers of the government to issue the grants as was done on the 17th day of July, 1900. These questions can more satisfactorily be treated together than separately. It has been held by this court that a title to land will not be presumed to be abandoned for mere lapse of time, but there must be some affirmative act to constitute and positive proof to establish abandonment, and that the burden of proof is upon the party claiming the abandonment to prove it. This was so held in Woods v. Bonner, 89 Tenn. 411, 18 S. W. 67, and Carson v. Stevens Lumber Co. (no opinion filed). In Woods v. Bonner, 89 Tenn. 411, 18 S. W. 67. the outstanding title which it was claimed was abandoned was one based upon a deed delivered, registered, and preserved as a muniment of title. Page 415 of 89 Tenn., page 68 of 18 S. W. In Carson v. Stevens Lumber Co. it was held that the title was not abandoned because the plaintiff took out a grant at a time when he was authorized by law so to do upon his entry; in other words, when there was a law in force authorizing the issuance of a grant upon such an entry as was held by complainant. In that case the entries were made in 1840. The grant was issued in 1872. At the latter date Acts 1869, p. 25, c. 24 (Whitney, p. 678), was in force, and under its provisions further time of 20 years from its passage, or until December 1, 1889, was given to all persons to perfect their titles to lands upon all entries made prior to that time. Under that act the complainant in the case of Carson v. Stevens Lumber Co. took out his grant and perfected his title, and had the authority of that act for so doing. That act would have expired by its own limitation December 1, 1889, and would have been no authority to issue a grant on the 17th day of July, 1900, when the grants in the present case issued. But that act of 1869 was repealed by Acts 1873, p. 120, c. 82, approved March 24, 1873 (Whitney, p. 218), and the time was limited to persons to perfect their titles by the latter act of two years from the date of that act, or until the 24th day of March, 1875. Since the date of March 24, 1875, there has been no act extending the time within which titles may be perfected, and a grant issued in 1900 upon an inchoate title or entry previous to 1873 is without warrant of law, and is void and inoperative. We need not, therefore, inquire critically into the title of defendants, as the title of complainants is not based upon any subsisting title at the time the grant was issued, July 17, 1900, and this must be so whether it stands upon its own merits alone or whether it interferes with any other intervening rights or titles.

"Complainants' entries were made in 1840. Since that time the Legislature has time and again extended the time within which he might perfect his title and obtain his grants: On 30th of November, 1841, the time was extended two years. On 12th of October, 1843, the time was extended two years. On 26th of January, 1846, the time was extended two years. On 24th of January, 1850, time was extended to September, 1851. On 3d of November, 1851, time was extended to March 1, 1854. On 20th of December, 1853, time was extended to April 1, 1856. On January 22, 1855, time was extended to November 1, 1857. On 30th of October, 1857, time was extended two years. On 20th of

October, 1859, time was extended 12 months.  On 5th of December, 1866, time was extended two years.  On 1st of December, 1869, time was extended 20 years.  On 24th of March, 1873, time was extended two years, and the Act of December 1, 1869, was repealed.  Since the act of March 24, 1873, there has been no act extending further time to perfect prior entries.  These are general extension laws.  Special extension acts relating to lands south and west of the congressional reservation line close with the act of 1847, p. 50, c. 20, and that act extends the time to perfect titles to September 1, 1849; and since the latter date there has been no extension act relating specially to lands south and west of the congressional reservation line, where the lands in controversy lie.  See Whitney's Land Laws, pp. 619 to 624, inclusive.  Under none of these acts have complainants sought to perfect their title and obtain a grant, and it is only after the lapse of 50 years that they have obtained grants.  In the meantime it appears that the lands have remained wild and unoccupied, and with no apparent assertion of ownership; and it is not even alleged that there has been the payment of taxes by complainants.

"It is evident that a different rule must prevail in regard to the abandonment of incomplete and inchoate titles vesting in entries from that which obtains as to titles perfected by deeds or grants.  In case of a deed or grant the grantee may simply remain inactive, as nothing further is required of him to perfect his title, and he is in no danger except from an actual adverse holder with or without color of title.  But when the title is incomplete and the holder of it fails, refuses, or declines to perfect it or to avail himself of opportunities offered him to perfect it coupled with legislative threats of forfeiture, if he does not do so, it is a strong circumstance to show abandonment.  That an entry may be abandoned is held in Bullock v. Tipton, 2 Head, 408, where Cochrane made an entry during a hiatus, and could no doubt have perfected his title, but abandoned it when he ascertained that it conflicted with Tipton's prior entry.  The court held that, being abandoned, no equity or right to a grant could be predicated on it.  The same principle was announced prior to that date in Vaughn & Brown v. Hatfield, 5 Yerg. 235, in which case the court, through Judge Peck, held that the caveatees had abandoned their entry in making their survey.

"The whole body of extension acts passed by the state, giving from date to date further time to perfect titles upon previous entries is based upon the idea of abandonment of such prior entries.  A large number of these acts, while extending time to perfect previous entries, expressly provide that in case of failure to perfect such titles under the act, the entries or rights shall be void, and the land subject to entry by any other person under the law.  We refer to only a few of these acts, to wit:  Acts 1823, c. 35 (Whitney, p. 239); Acts 1842, p. 39, c. 34 (Whitney, p. 285); and Acts 1847, p. 50, c. 20 (Whitney, p. 303), the latter being the last extension act especially relating to lands and titles south and west of the congressional reservation line.  In Acts 1823, c. 35 (Whitney, p. 237), it is expressly provided that upon a failure to comply with its provisions the entry shall be voidable and the lands liable to appropriation as other vacant lands in the state.  And in Sampson v. Taylor, the court, through Judge Caruthers, in 1854, said that act had never been altered by any of the extension acts during the 31 years since its passage; nor has there been any such act subsequent thereto.  It is clearly the holding of the court in all the cases that in the absence of any statute extending the time for perfecting titles based on old entries, such old entries could not be carried into grants, and during the hiatus between the several extension acts such entries could not be perfected by grants.

"This idea is recognized, if not expressly held, in Tipton v. Sanders, 2 Head, 690; in Williamson v. Throop, 11 Humph. 265; in Sampson v. Taylor, 1 Sneed, 600; in Blevins v. Crew, 3 Sneed, 155; in Henegar v. Matthews, 88 Tenn. 132, 14 S. W. 554; in Scott v. Price, 2 Head, 536.  In Tipton v. Sanders, 2 Head, 690, the court says, 'the effect of the acts of 1851–52 and 1853–54 was to resuscitate the right [to a grant] and prolong the time for perfecting the plaintiff's title to a period beyond the date of his grant,' recognizing the necessity for a resuscitating act to authorize the grant.  In the case of Williamson v. Throop, 11 Humph. 265, the court, speaking through Judge Green, held that

it was competent for the Legislature to give validity to an entry previously made by force of such subsequent extending law, and this was also a recognition of the necessity for such reviving or authorizing act. In Sampson v. Taylor, 1 Sneed, 600, the court, through Judge Caruthers, said: 'Then, in order to preserve the advantages of priority of entry, the same must have been made and the grant obtained in the specified time prescribed by the act of 1823 or within some period of extension. These are conditions imposed by the state, and they must be complied with by all who set up claim to her lands.' In the case of Blevins v. Crew, 3 Sneed, 155, lands in the Hiawassee district were involved. The extension acts specially relating to that district simply extended time within which grants might be obtained, but did not declare any forfeiture for failure to do so. The court held that there was no difference in principle between that case and the cases of Williamson v. Throop and Sampson v. Taylor; in the first of which cases it was held that if the older entries were not perfected by grants within a certain time they should be void as against younger entries and grants; and in the latter case, that the older entries should be voidable and the land subject to appropriation as other vacant lands under Acts 1823, c. 35, § 10. In Henegar v. Matthews, 88 Tenn. 132, 14 S. W. 554, the court, through Judge Lurton, says: 'Between November 16, 1839, and January 25, 1840; there was no law under which a grant could have issued upon Henegar's entry—but the act of 1840 resuscitated this entry.' In Scott v. Price, 2 Head, 536, the court, speaking through Judge Wright, holds that occupant extensions may lose their prior rights by not perfecting their titles before a hiatus, and also states that it is unlawful for a general enterer to interfere with any occupant right, unless it be during some hiatus in the law by which they are secured. Indeed, this idea of the necessity for a resuscitating act is the sole basis for all our extension laws, and unless this was the view of the Legislature and the courts, there was no necessity for any extension acts whatever.

"We have been cited to no cases, and have been unable to find any, where a grant issued upon an old entry during a hiatus and not based upon an extension or resuscitating act has been held valid. We are at a loss to know how there could be such holding, in the face of the manifest purpose of the various extension laws to confer authority to perfect titles, and the manifest policy of the state to force claimants to perfect such titles so that they might not rest in an incomplete and inchoate state or condition. Every opportunity was afforded by means of these extension acts, and at the same time every caution was given to claimants to avail themselves of the opportunity thus extended. It is the policy of the state that titles should be at rest, and, after giving extensions of time for the perfection of titles from time to time from 1779 in the case of military titles, and from 1821 in regard to titles south and west of the congressional reservation line, until September 1, 1849, and generally to sections of the state until March, 1875, the Legislature has made no further provision to validate titles that are based on entries prior to 1873. That a resuscitating act was considered necessary appears also from the provisions of the act of October 20, 1859 (Laws 1859–60, p. 1, c. 1; Whitney, p. 617), when it is provided that any hiatus that might occur under the act should not impair the rights of infants, married women, persons of unsound mind, etc., which was passed soon after the decision of the several cases in 2 Head, when the hiatus question was so fully treated, and clearly implies that the rights of adults should be forfeited as a consequence of such acts, but a like result should not apply to persons under disability.

"We think the present case does not fall within the rule laid down in Fogg v. Williams, 2 Head, 474, and Egnew v. Cochrane, 2 Head, 325. Those cases involve titles based upon North Carolina warrants which, under the cession act, the compact, the Constitution, and earlier acts of Tennessee, were to be protected and perfected in preference to all others. In the case of Fogg v. Williams, 2 Head, 474, it was held by the court, through Judge McKinney, not that the subsequent entries and grants were void, but that the parties took titles under them, but, under the cession acts, etc., they held them in trust for the North Carolina warrant owners; and in Egnew v. Cochrane, the court did not hold that complainant's inchoate title was void, but simply that com-

plainant had abandoned it. But the titles in this case are extension titles, and while based upon a seed grant of about 6 or 10 acres, possibly, though the facts do not appear, upon a warrant from the state of North Carolina, yet they arise under the operation of Tennessee law, and are not titles derived from the state of North Carolina or based on North Carolina warrants, except in the sense stated, and no trust exists in favor of these titles.

"We conclude that in view of the long delay to perfect complainant's titles—the persistent failure or refusal to take advantage of any of the numerous resuscitating or enabling acts for a period of 50 years—the fact that no real occupation and no apparent ownership or assertion of title, not even the payment of taxes during that time, has been made of the lands, the complainant must be held to have abandoned his titles, and the issuance of a grant in July, 1900, after the lapse of a hiatus of 25 years, during which there has been no authority to issue a grant upon such an entry, cannot revive or resuscitate his title or infuse new life into his dead entries. And this must be the effect without regard to the validity and strength of defendant's title. Whether that would prevail in an action of ejectment brought by defendants we need not consider. We cannot try an action of ejectment upon a comparison of titles [Lowery v. Whitehead, 103 Tenn. 397, 53 S. W. 731], but we conclude that complainants have not shown a perfect title and cannot recover, and the decree of the court below is affirmed with costs."

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

H. H. Ingersoll, for appellant.

J. A. Susong, for appellee.

LURTON, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The opinion of the Tennessee Supreme Court in Sampson's Heirs v. Chester's Heirs, though announced before this case was originally heard by this court, was unreported, and, being unknown to counsel, was not called to our attention. The question in that case arose between two Tennessee grants covering the same land. The court held that both grants were based upon invalid entries; the complainants' entry, because not carried into a grant during the life of any extension act, and the defendants, because junior to the complainants and not made during any hiatus. The court, in this situation of matters, held that an entry was not indispensably necessary to the validity of a grant, citing for this, Craig's Lessee v. Vance, 1 Overt. 182, a case referred to and commented upon in former opinion of this court. Neither grant being based upon a valid entry, the court held that the state's title passed under the older of the two grants.

Inasmuch as counsel for the defendant have very earnestly urged that the decision of the question of the validity of the grant based upon no entry or upon one which had expired was not necessarily involved, and is not, therefore, an authoritative opinion of the Tennessee court which we should follow, we have set out the opinion of the court elsewhere, as well as the dissenting opinion by Justice Wilkes. The dissenting opinion makes it plain that a majority of the Tennessee court chose to place the opinion and decision, not upon the ground so strenuously urged by Justice Wilkes, that the complainants had failed to show a perfect legal title and could not recover, however weak the title of the defendants, but upon the ground that, although the entries upon which both grants were based were void, that an entry was not essential to the validity of a grant and, there-

fore, the older of the two conflicting grants passed the state's title. This view of the decision is emphasized so strongly by the dissenting opinion that we cannot escape the conclusion that the Tennessee court has most positively decided that an older grant based upon an expired entry passes the legal title as against a younger grant based upon a younger entry made when there was no hiatus. It is true that the Tennessee court does not in express terms overrule Crutchfield v. Hammock, 4 Humph. 203, and the other cases following that, which are cited in the opinion of this court. But it is impossible to reconcile the opinion with those cited by us, some of which are noticed in the dissent of Judge Wilkes, or with the interpretation which we placed upon them, and this is made very evident by the whole tenor of the dissenting opinion. The question is one so peculiarly local in character, involving as it does the title to Tennessee land under the Tennessee statutory provisions concerning the granting of the state's land, that we feel under the highest obligation to conform our decision to the construction of the Tennessee statute law as announced by the Tennessee Supreme Court in his latest authoritative conclusion.

The Burgner grant, the grant under which the complainant deraigns title, is the oldest grant. It issued upon an expired entry. The West grant laps upon the Burgner grant. It is junior in date and issued upon a junior entry made at a time when the Burgner entry was a live entry. Under the decision in Sampson v. Chester, the Burgner entry when the Burgner grant issued was void, and under the same decision the West entry, so far as it conflicts with the Burgner entry, was also void, because made when there was no hiatus. The case is therefore governed by the decision in Sampson v. Chester. Neither entry is in evidence. Neither was valid when carried into a grant, so far as the younger conflicted with the senior entry. But this does not affect the validity of the grant to Burgner. It carried the state's title as of the date of the grant, and the state had no title to grant when the West grant issued to the land covered by the Burgner grant. There can be no doubt but that if this case were being heard in the Supreme Court of Tennessee, the Burgner grant would be held a valid grant. We shall therefore withdraw our former opinion, and hold that the complainants' title under the Burgner grant is the superior title, and affirm the decree of the Circuit Court in so far as it held the Burgner grant to be superior to the extent that the one interfered with the other. The Circuit Court did not decide the extent of this interference, and gave the parties leave to try out this question of boundary in another suit if they shall be so advised. The assignments which go to the complainants' deraignment of title under the Burgner grant have been considered. We conclude that the Burgner land was sold and title passed under the levy, condemnation proceedings, and order of sale under the Sevier judgment.

E. S. Mathews, executor of Alexander Mathews, redeemed from Sevier and obtained a good title under the Sevier proceedings. It is therefore unimportant whether his own levy and sale was regular or irregular. The description of land sold under the Sevier levy and

condemnation proceedings was, in our judgment, sufficient. The identification was such as to give information to the owner, and such as would enable a purchaser to learn what land he had bought. Stephens v. Taylor, 6 Lea, 307, 309.

The levy of the Sevier execution is objected to because made by one J. G. Feller, who does not append to his signature upon his return the office held by him. That he was in fact a constable at the time appears from his designation as such just before and just after upon other process in same case, as well as from parol evidence that he was exercising the functions of a constable. That he assumed to be an officer and made a levy and return under a writ directed only to a lawful officer is enough, upon a collateral attack, to justify the presumption that he was such at date of his levy. Keely v. Sanders, 99 U. S. 441, 447, 25 L. Ed. 327.

There is nothing in the objection that the legal title at date of levy 1867 was not in Burgner, but in one Tilford as trustee under a mortgage made by Burgner in 1841. It is not satisfactorily shown that the land described in the trust deed is any part of the land now claimed by complainant. Aside from that, the time which had elapsed between the making of the trust deed to Tilford and the levy by Sevier was such as to justify a presumption that the debts secured thereby had been satisfied; in which event the title would revert to the grantor, the trust having been executed. That trust deed was made December 8, 1841. The levy was made May, 1867. Upon a collateral attack, and in absence of all evidence that any of the claims so secured were still unpaid, a presumption may be indulged in favor of the satisfaction of the deed. Thompson v. Thompson, 2 Head, 405. After so great a lapse of time every reasonable presumption should be indulged in favor of the validity of the proceedings now attacked collaterally. Pope v. Couts et al., 16 Lea (Tenn.) 82; Sheafer v. Mitchell, 109 Tenn. 182, 71 S. W. 86.

One link in complainant's chain of title was a sheriff's deed made April 30, 1890, to G. W. Tilford. Tilford at the time was dead. Pending the litigation appellee, complainant below, filed a supplemental bill for the purpose of bringing into the case a curative sheriff's deed, made pending the suit, for the same land, direct to complainant by direction of the executor of Tilford. Several objections are made to this deed. Tilford redeemed this land in 1869, from E. S. Mathews, executor, who had redeemed from Sevier, but took no deed from the sheriff. In April, 1890, the sheriff then in office and successor to the sheriff in office at date of Tilford's redemption, made a deed to Tilford, not knowing that Tilford was dead. This sheriff's deed was one of the links in the complainant's title when this bill was filed. Being made to one who was dead the deed was ineffectual. Weihl v. Robertson, 97 Tenn. 458, 37 S. W. 274, 39 L. R. A. 423. To cure this defect, complainants procured a written direction from West, executor of Tilford, to the sheriff then in office, to make a deed direct to them, they having acquired Tilford's equitable title. This was done and another deed executed by the sheriff then in office, being the successor to the sheriff who made the sale under the

141 F.—53

condemnation procedings under the Sevier judgment referred to heretofore. This deed was made in 1903. The authority of Tilford's executor to dispose of any interest Tilford may have had by virtue of his redemption of this land from Mathews is challenged upon the ground that Tilford had been dead 16 years and his estate wound up. But West had not resigned or been removed, and this asset remained to be administered. He had ample power under Tilford's will to sell and convey any part of Tilford's estate, real and personal, and we see no reason for doubting the validity of his direction to the sheriff to make deed to the complainant company. It is next said that this sheriff's deed was made 33 years after the execution sale of the land conveyed. The Tennessee Code (Shannon's Code, § 4783), authorizes the sheriff who makes such sale to make deed to the purchaser or any one succeeding to the rights of such purchaser "at any time, either within or after the expiration of the two years allowed for redemption." Section 4785 of same Code provides that any sheriff in office may execute deeds for lands sold by former sheriff, and that such deed "shall be as valid as if executed by such former officer." The statute prescribes no time within which a deed may be made by the successor of a sheriff or other officer who made a sale, and we see no reason for denying the power in this case. Sheafer v. Mitchell, 109 Tenn. 203, 71 S. W. 86, et seq.

Finally, it is said that a complainant can not acquire a title pending his suit and bring it forward by supplemental bill. That is not this case. The complainants had an imperfect but inchoate title when they brought this suit. They simply perfected the existing title by obtaining a valid sheriff's deed in place of an invalid one which attempted to convey the same title. It was not error to permit a curative deed to be thus brought forward. Gibson's Suits in Equity, 650; 2 Daniel Pl. & Pr. (4th Ed.) 1515 and 1516, and notes; Mutter v. Chanvel, 5 Rus. 42; Sadler v. Lovett, 1 Moll. 162; Jaques v. Hall, 3 Gray (Mass.) 194.

The decree of the lower court must be affirmed.