## DEWING et al. v. WOODS.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1901.)

No. 396.

QUIETING TITLE—RIGHT OF ACTION—TITLE OF PLAINTIFF.

> A court of equity cannot entertain a bill to remove a cloud upon the title to real estate without clear proof of both possession and legal title in the complainant; and where the bill itself shows that taxes were assessed against the land which were not paid, that it was sold for such delinquent taxes and purchased by the state, and that a decree has been entered by a state court adjudging the title to be in the state, and asks, among other things, that the sale of the land as directed by such decree be enjoined, it fails to state a case upon which a federal court of equity can grant relief.[1]

Appeal from the Circuit Court of the United States for the District of West Virginia.

In Equity.

John Bassel (E. D. Talbot, on the brief), for appellants.

John H. Holt and J. Hop Woods (Samuel V. Woods, on the brief), for appellee.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

GOFF, Circuit Judge. The bill in this case was filed on the 27th day of March, 1896, in the circuit court of the United States for the district of West Virginia. Fred Fickey, Jr., the complainant, sold his title, claim, and interest in the land in controversy by deed of June 21, 1897; and by decree entered on the 30th December, 1899,—the said Fred Fickey, Jr., having departed this life,—the case was revived in the name of Frank Woods, who then owned such title to the lands mentioned as Fickey had theretofore possessed. The object of the suit was to remove a cloud upon complainant's title to a tract of 5,000 acres of land situated in the counties of Randolph and Pocahontas, in the state of West Virginia. It appears from the record that the state of West Virginia on the 10th day of June, 1866, granted said tract of land to W N. McVeigh and others, and that by regular mesne conveyances the said Frank Woods claimed title thereto; that the defendants below, when this suit was instituted, claimed said tract of land by virtue of two deeds made by A. H. Winchester to James H. Dewing, dated February 25, 1886, and August 23, 1887. The said Winchester claimed part of the land by virtue of certain deeds connecting him with the patent to Henry Banks for 36,000 acres, dated July 11, 1795, granted by the commonwealth of Virginia: other part by a deed made by Elihu Hutton and wife, dated August 19, 1887; another portion under a tax sale in the year 1881 by the commissioner of school lands for Pocahontas county; and another portion (the southern part thereof)

[1] Necessity of possession in suits to quiet title, see note to Jackson v. Simmons, 39 C. C. A. 522.

under a tax sale made in the year 1887 by the commissioner of school lands for said county. · The deeds under which the defendants below claimed title to the land in controversy covered the entire 5,000-acre tract described in the bill as the property of the plaintiff, but during the pendency of the suit in the court below the defendants disclaimed as to 947 acres, known as the "Hutton Land"; and as to this part, on the 15th of June, 1897, a decree was entered confirming the complainant's right and title thereto. The record discloses that the Banks survey covers about 2,800 acres of the McVeigh grant, and it also plainly shows that the Banks title was, and had been for years, at the time the McVeigh patent issued, forfeited, both for the nonentry and nonpayment of taxes. Therefore the land covered by it was again open to entry and grant, and consequently the 5,000-acre patent to McVeigh and others was valid and binding, even though a great part of it was included in an older grant. It also appears by the record that the said tract of 5,000 acres of land was duly entered upon the land books of Randolph county in the names of McVeigh and others for the years 1869, 1870, 1871, and 1872, and properly assessed and charged with taxes, but that the taxes were not paid, and the land was therefore returned as delinquent, and in due time sold by the sheriff of said county because of the nonpayment of such taxes, and purchased by the state of West Virginia; that on the 1st day of May, 1876, the commissioner of school lands of Randolph county instituted, pursuant to chapter 105 of the Code of West Virginia, proper proceedings in the circuit court of Randolph to have said land sold for the benefit of the school fund, and an order was passed by said court, after said land had been surveyed into lots, and the taxes duly ascertained, directing the school commissioner to sell the said tract of 5,000 acres at public auction, which order is still in force, but has not been executed, for the reason that the court below inhibited such sale pending this suit, and until its further order. The case, having been fully matured, came on to be heard on the pleadings, proceedings, and evidence, when the court below, on the 21st day of June, 1900, entered a decree in favor of the complainant, finding that he was the owner in fee simple of the land described in the McVeigh patent, and adjudging that the deeds under which the defendants claim constitute a cloud and an incumbrance upon the complainant's title to said land, and ordering that the same be canceled, set aside, and declared of no force and effect. To this decree the appeal we are now considering was allowed.

There can be no question as to the jurisdiction of equity of suits to remove clouds upon the title to real estate, but it is just as well determined that only those who have a clear legal title, connected with the possession of land, have any right to ask the aid of a court of equity in removing a cloud on the title to the same. We are unable to find with the court below that the complainant is the owner of the legal title to the land embraced in the McVeigh survey, for it plainly appears from the record of this cause that such title to said land is held by the state of West Virginia, as adjudged by the decree of the circuit court of Randolph county,—a judicial

finding that we in this proceeding are not at liberty to ignore. In addition, the complainant's bill admits the nonpayment of the taxes due on the land claimed by him, concedes the sale of said land and its purchase by the state, refers to the decree of the circuit court of Randolph county adjudging the title to be in the state, and ordering the sale of the land for the benefit of the school fund, and asks, among other things, for a decree restraining such sale.

Mr. Justice Gray, speaking for the supreme court of the United States in Frost v. Spitley, 121 U. S. 552, 556, 7 Sup. Ct. 1129, 1131, 30 L. Ed. 1010, 1012, says:

"Under the jurisdiction and practice in equity, independently of statute, the object of a bill to remove a cloud upon title and to quiet the possession of real estate is to protect the owner of the legal title from being disturbed in his possession or harassed by suits in regard to that title; and the bill cannot be maintained without clear proof of both possession and legal title in the plaintiff. Alexander v. Pendleton, 8 Cranch, 462, 3 L. Ed. 624; Peirsoll v. Elliott, 6 Pet. 95. 8 L. Ed. 332; Orton v. Smith, 18 How. 263, 15 L. Ed. 393; Crews v. Burcham, 1 Black, 352, 17 L. Ed. 91; Ward v. Chamberlain, 2 Black, 430, 17 L. Ed. 319. As observed by Mr. Justice Grier in Orton v. Smith, 'Those only who have a clear legal and equitable title to land, connected with possession, have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title.' 18 How. 265, 15 L. Ed. 394. A person out of possession cannot maintain such a bill, whether his title is legal or equitable; for, if his title is legal, his remedy at law by action of ejectment is plain, adequate, and complete, and, if his title is equitable, he must acquire the legal title, and then bring ejectment. United States v. Wilson, 118 U. S. 86, 6 Sup. Ct. 991, 30 L. Ed. 110; Fussell v. Gregg, 113 U. S. 550, 5 Sup. Ct. 631, 28 L. Ed. 993."

It was alleged in the bill that complainant had a fee simple title to the land in controversy, and that he was in possession of the same. The record shows that complainant did not when the bill was filed, and does not now, have the legal title to the land, and therefore it is entirely unnecessary that we consider the matter of possession. The facts disclosed by the record relating to the title of appellee are as we have stated, and, the law applicable thereto being as we have quoted, it follows that there was error in the decree entered by the court below on June 21, 1900. As the bill must be dismissed because it appears that the complainant did not have the legal title to the land in controversy at the time this suit was instituted, and that such title was then and is now vested in the state of West Virginia, it will not only be useless, but really improper, for us to further consider the questions of law and fact raised by the pleadings, testimony, and argument. On the bill alone the case is against the complainant below.

The decree appealed from is reversed, and this cause is remanded, with directions that the bill be dismissed. Reversed.