## WESTFELT v. ADAMS.

(Filed November 25, 1902.)

1. EJECTMENT—*Pleadings—Equity.*

   Ejectment may be brought to recover land on an equitable title, though no facts constituting the equity are alleged in the complaint, where a court of competent jurisdiction would order a correction of the defect in an *ex parte* proceeding.

2. DEEDS—*Seal—Evidence—Title—Bankruptcy.*

   A deed of an assignee of a bankrupt is competent evidence as a link in a chain of title to land, though not sealed, where the bankruptcy proceedings shows the authority of the assignee to execute the deed.

3. DEEDS—*Acknowledgment—Probate—Seal—Registration.*

   The certificate of probate to a deed need not have a seal if not required by statute at the date of the execution or registration of the deed.

4. EVIDENCE—*Hearsay—Declarations—Ejectment—Boundaries.*

   The declarations of a deceased person are admissible to establish a corner of a tract of land, which is not in view at the time of the declarations, but the position of which was afterwards identified by other witnesses.

5. EVIDENCE—*Reputation—Boundaries.*

   In an action involving a disputed boundary, general reputation as to the boundary is not competent evidence where such reputation did not arise before the beginning of the suit.

ACTION by G. R. Westfelt and others against W. S. Adams, heard by Judge *George A. Jones* and a jury, at July Term, 1901, of the Superior Court of SWAIN County. From a judgment for the plaintiff, the defendant appealed.

*F. A. Sondley* and *Julius C. Martin,* for the plaintiffs.
*Merrimon & Merrimon, Shepherd & Shepherd,* and *J. J. Hooker,* for the defendant.

MONTGOMERY, J.   Four questions of importance are involved in the case on appeal: First, the propriety of an action to recover possession of land where the title is an equitable one, the equity not being stated in the complaint; second, the legal effect of a conveyance for land, not being under seal when introduced as a link in the chain of title; third, the rule concerning hearsay evidence as applicable to boundary; and, fourth, the rule in reference to general reputation as to boundary.

It seems to be settled by the decisions of our Court that a plaintiff may recover in ejectment upon an equitable title. *Taylor v Eatman,* 92 N. C., 601; *Condry v. Cheshire,* 88 N. C., 375; *Geer v. Geer,* 109 N. C., 679.   In cases, however, where it is necessary to establish equitable ownership by extrinsic testimony, then the facts and circumstances should be particularly set out in the complaint.   Under the former system, in cases where it became necessary to resort to the court of equity to recover possession of land, all the facts necessary to establish the equity and to warrant equitable interference were required to be set out in the bill.   And under the present practice, in conformity to the old practice, they must be particularly set forth in the complaint.   But where the naked legal title is outstanding in another, or where upon the face of the record evidence, introduced on the trial, a Court of competent jurisdiction would, in an *ex parte* proceeding and as a matter of course, order the correction of a mere formal defect in a deed for instance, it is not necessary to set forth the particular facts constituting the equity in the pleadings.   *Geer v. Geer, supra.*   And that view is not inconsistent with *Patterson v. Galliher,* 122 N. C., 511, and the cases there cited.   Of course the same rule would apply in cases where the defendant was defending his possession.

In respect to the second question, the legal effect of deeds not under seal, of course the general rule is that they

convey nothing and are void.    Land can only be conveyed by
deed, and a deed is an instrument of writing, signed, sealed
and delivered.    But there is an exception to the rule, or at
least one instance in which the lack of a seal may be dispensed
with, under a decision of this Court, a decision which meets
our hearty approval.    *Geer v. Geer, supra.*    There, the deed
was without seal.    On the trial the plaintiff introduced evi-
dence in the nature of a record of the Superior Court con-
cerning a sale of land for partition.    The Clerk of the
Court, who was appointed to sell the land and convey the
same to the purchaser, omitted to put a seal at the end of his
name, and the Court held that "Where upon the face of the
record evidence, like that before us, the Court would in a di-
rect proceeding as a matter of course order the correction of
a mere formal defect in the execution of its decree, it is
unnecessary (though perhaps better practice) to set forth the
facts in the proceeding."

In the case before us there appeared no seal to the deed
which formed a main link in the chain of the plaintiff's title,
and in his complaint there were no equities set out.    The
plaintiff, however, introduced in evidence the full record of
the bankruptcy proceedings on the petition of E. H. Cunning-
ham, filed on the 26th day of May, 1868.    That record
showed the appointment by the proper authority of F. S. H.
Reynolds, of Buncombe County, as assignee of the bank-
rupt, and the deed in question, in which was conveyed the
land in dispute, was executed by Reynolds, the assignee, to
George Westfelt, the plaintiff.    We are of the opinion that
the same rule ought to be applied here that was applied in
*Geer v. Geer, supra.*    Certainly the United States District
Court, through which the administration of the bankrupt
law of 1867 was conducted, would, upon the inspection of the
records introduced in this case as evidence, upon motion,
order a commissioner appointed by the Court to execute a

deed with a seal—the defect in the original being merely technical and formal.

Under the circumstances of the case, we think there was no error in the ruling of his Honor that the deed was sufficient to pass title. Probate of the deed was had in Buncombe County, and the land was situated at that time in the county of Macon, and afterwards embraced in the territory of the new county of Swain (formed in 1871, Public Laws 1870-'71, Chap. 94). The officer who took the probate in Buncombe County did not attach his seal to the certificate, and when the registry of Swain County was introduced by the plaintiff, the defendant objected because the certificate of the probate officer of Buncombe County was not made under that officer's seal. The probate was dated May 1, 1869, and was registered in Swain County on September 16, 1881. At neither date did the laws require the certificate to be accompanied by the seal of the probate officer. Acts 1868-'69, Chapter 64; Batt. Rev., Chap. 35, Sec. 5; *Holmes v. Marshall,* 72 N. C., 37.

The third and fourth questions for consideration can be discussed together:

The beginning corner of the tract of land claimed by the plaintiff was the chief matter in dispute. In *Dobson v. Finley,* 53 N. C., 495, in the discussion of the admissibility of evidence by general reputation and of hearsay, Chief Justice Pearson, for the Court, said: "It is settled law that both kinds of evidence are competent evidence of private boundary in this State. In the latter, to-wit, hearsay evidence, it is necessary as a preliminary to its admissibility to prove that the person whose statement it is proposed to offer in evidence is dead; not on the ground that the fact of his being dead gives any additional force to the credibility of his statement, but on the ground that if he be alive he should be produced as a witness; whereas, it is manifest that in respect to evi-

dence by reputation, this preliminary evidence can not arise. *Shaffer v. Gaynor,* 117 N. C., 15.

In the case before us, his Honor admitted the testimony of two witnesses (Cable and Francks) as to the beginning corner of the plaintiff's land, who got their information from persons deceased, the witness not having been at the time of receiving his information at or near the boundary beginning, but twenty-five or thirty miles away; that is, that the corner or the beginning was not pointed out to the witness by the deceased person. Those particular witnesses had never afterwards actually identified the boundary as fitting the description given by the deceased declarant. *Other* witnesses, however, testified that they found a tree at the alleged beginning corner answering the description given by the deceased to the first witnesses. If the beginning corner had not been afterwards identified, then the testimony of Cable and Francks would have been inadmissible; because it was afterwards found, we think it was competent.

In *Scoggin v. Dalrymple,* 52 N. C., 46, the Court said: "The precise point and the only one presented in the bill of exceptions, is whether the declaration of a deceased person is admissible to establish a corner tree which is not in view at the time of the declaration, but the position of which is *described* by the declarant *so* that it is found by *a* witness." (Italics the writer's.) The testimony was held to be admissible. The hearsay becomes definite by the aid of the witness who, following the direction given, finds the tree, and while it might be considered as of doubtful admissibility, disconnected from the evidence of the living witness, yet, aided by that, it sems to us clearly competent. We do not wish to be understood as laying down a rule that declarations of deceased persons as to corner or line trees not in view would be incompetent; that might depend upon whether their positions were so defined by the declarant as to make it practicable to

identify them or prove their location to the satisfaction of the Court and jury. The point before us is, whether the hearsay evidence offered, connected with the other testimony giving it definiteness, was properly left to the jury, and that only we undertake to decide. The force of the proof would of course depend upon the identification of the tree found with the tree meant by the deceased, which was properly submitted as a matter of fact, we suppose, to the jury."

We think that the testimony was competent, although *the* witness to whom the declarant made his statement was not the witness who afterwards identified the boundary. It is not so much *which* witness afterwards found the corner, as it is the description which the declarant gave of the corner which enabled it to be found.

His Honor allowed two witnesses to testify that by general reputation the chestnut tree claimed by the plaintiff was the beginning corner. They said they had never heard anything about that tree being the beginning corner, until after the year 1886. The land was entered and surveyed in 1860, and this action was commenced in 1891.

We are of opinion that the evidence of the witnesses on general reputation ought not to have been received, for two reasons; first, it was too recent, and, second, it had not attached *ante litem motam.*

There were only about five years elapsing between the time when Westfelt went to the corner, which he claimed as the beginning corner of his land, with the entry taker of the county, and a surveyor, to identify and ascertain the beginning corner, and the commencement of this action. Surely that was too short a time in which traditionary or general reputation evidence could be said to attach. *Deaver v. Jones,* 119 N. C., 598. Tradition and general reputation, in common sense and in law, must mean that which is derived from the declarations of those who lived or were living at a time, if not ancient, at least comparatively remote.

It is clear from reading the whole evidence that the plaintiff did not know, in 1886, where his lines were. As we have said, the land was entered and surveyed in 1860. It was then surveyed again in 1877 by the deceased surveyor, McDowell. It was surveyed again in 1886, at which time Westfelt, a surveyor and the entry taker were unable to make a starting point in the survey, until they had sent back and got McDowell, who had made the survey in 1877, to join them. It was again surveyed in 1891. Surely, then, a survey made by the plaintiff in 1886, in which he settled his own beginning point, under all the circumstances shown in the evidence, ought not to be allowed to fix by reputation the boundaries of his land. The ground on which such evidence is admitted at all is that "the declarations are the natural effusions of a party who must know the truth, and who speaks upon an occasion when his mind stands in an even position, without any temptation to exceed or fall short of the truth." There can not be entire indifference in a community about matters over which there is a controversy, for, as a rule, in disputes, men take one side or the other, and if they desire to be entirely impartial they may not see facts through a true medium. In the first volume of Greenleaf on Evidence, at section 132, the author writes on this subject: "To avoid, therefore, mischiefs which would otherwise result, or *ex parte* declarations, even though made upon oath, referring to a date subsequent to the beginning of the controversy, are rejected. This rule of evidence was familiar in the Roman law; but the term *lis mota* was there applied strictly to the commencement of the action and was not referred to an earlier period of a controversy. But in our law, the term *lis mota* is taken in the classical and larger sense of *controversy,* and by *lis mota* is understood the commencement of the controversy, and not the commencement of the suit."

For the error in the admission of the evidence on general reputation there must be a new trial.

In the discussion of the case, we have felt called upon to consider the other questions involved in the case on appeal, feeling certain that they would be raised again in the course of the next trial, and that counsel may know our views on them.

New Trial.