NORTH CAROLINA MINING CO. v. WESTFELDT et al.

(Circuit Court, W. D. North Carolina. February 5, 1907.)

1. QUIETING TITLE—BILL—SUFFICIENCY.

　　A bill alleging that complainant was the owner of the land described, setting forth particularly the chain of title, and charging that defendant claimed an adverse interest or estate in the premises, which so affected complainant's title as to render a sale or other disposition of the property impossible, and disturbed complainant in its right of possession, etc., suf-

ficiently showed that complainant was in actual possession of the premises, and stated a cause of action to quiet title under Revisal N. C. 1905, § 1589, declaring that an action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claims.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Quieting Title, §§ 73, 74.]

2. ABATEMENT AND REVIVAL—OTHER ACTION PENDING—DIFFERENT JURISDICTIONS—STATE AND FEDERAL COURTS.

The pendency of a suit in a state court for the recovery of real property in controversy, in the nature of an action of ejectment, was no bar to a suit in equity in the federal courts to quiet title to such property, as authorized by Revisal N. C. 1905, § 1589, in which the positions of the parties were reversed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Abatement and Revival, §§ 87–89.]

3. COURTS—FEDERAL COURTS—JURISDICTION—PARTIES—UNNECESSARY PARTIES—DISMISSAL.

Where a federal court had jurisdiction of the subject-matter and the necessary parties, the bill could be dismissed as to any defendant who was not an indispensable party to the suit, whose presence would oust or restrict the jurisdiction, or the right, and be retained as to the other defendants.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 863.]

4. COURTS—FEDERAL COURTS—JURISDICTION—STATE STATUTES.

While the Legislature of a state cannot enlarge the equitable jurisdiction of the federal courts, it nevertheless may provide by statute for the enlargement of the equitable rights, which may be enforced by the Circuit Court of the United States by virtue of its equitable jurisdiction in the same manner as such rights are enforced by state courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 972–973.]

5. QUIETING TITLE—EVIDENCE—POSSESSION OF LAND—PRESUMPTIONS.

Where, in a suit to quiet title, there was evidence that possession began in 1899, and that A., complainant's grantor, conveyed the premises in 1901, there would be a presumption that the possession thus shown continued under A. and those claiming from him.

6. ACTION—RIGHTS ACCRUING AFTER COMMENCEMENT—QUIETING TITLE—REQUISITES—LEGAL TITLE.

In a suit to quiet title, as authorized by Revisal N. C. 1905, § 1589, complainant's deed, on being offered in evidence, was found to be unsealed, and therefore only to convey an equitable title; but, pending suit, the defect was cured by sealing, re-probating, and registering the deed, and by obtaining another deed from its vendor, which complainant had probated and registered and offered in evidence. *Held*, that though complainant was entitled to maintain the suit, on proof of his equitable title as shown by the deed first introduced, he was nevertheless entitled to cure the defect and establish his legal title pendente lite.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, § 736.]

7. QUIETING TITLE—ADEQUATE REMEDY AT LAW.

Where, in a suit in equity to quiet title as authorized by Revisal N. C. 1905, § 1589, complainant alleged that it was in actual possession of the premises in controversy at the time suit was instituted, and the proof established that complainant was still in possession, complainant had no adequate remedy at law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Quieting Title, §§ 6–9.]

8. COURTS—FEDERAL COURTS—EQUITABLE JURISDICTION.

A federal court will not turn a complainant in equity over to a remedy at law in a state court, but only to the law side of the federal court.

**9. PUBLIC LANDS—STATE GRANTS—REGISTRATION.**

Code N. C. § 2779, provides that the Secretary, on application of claimants' for state lands, shall make out grants for all surveys returned to his office, which grants shall be authenticated by the Governor, countersigned by the Secretary, and recorded in his office; that the date of entry shall be inserted in every grant, and no grant shall issue upon any survey unless the same be signed by the county surveyor, and every person obtaining a grant of land shall, within two years after such grant shall be perfected, cause the same to be registered in the county where the land shall lie, etc. From 1885 to 1893 there was no statute in force permitting the registration of such grants, and by Laws 1893, p. 52, c. 40, it was declared that grants previously made which were required to be registered might be registered in the county in which the lands lay, respectively, within two years from January 1, 1894, notwithstanding the fact that such specified times had already expired, and that all grants registered after the expiration of such specified time should be treated as having been registered within the time specified, etc. *Held,* that a failure to register a state grant within two years from the date of the issuance thereof did not avoid the same.

**10. SAME—STATE LANDS—PRIORITY OF GRANTS.**

Where complainant not only held under a senior state grant, but had been in possession of the land since 1899, while defendants held under junior grants, and had never been in possession of the premises, such junior grants were void.

**11. COURTS—FEDERAL COURTS—RULES OF DECISION.**

Where the priority of certain state grants had been settled by the Supreme Court of the state of North Carolina, the decision was binding on the federal court sitting in such state in a suit instituted therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 950, 958, 959.]

In Equity.

Jas. H. Merriman, Moore & Rollins, and Jos. J. Hooker, for complainant.

Julius C. Martin, A. C. Avery, and F. A. Sondley, for defendants.

PRITCHARD, Circuit Judge. This is a suit in equity, brought for the purpose of determining adverse claims to real estate under chapter 6, p. 37, of the Public Laws of 1893 of North Carolina, which provides "that an action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims," and for removing a cloud from and quieting the title to said estate. The bill was filed on the 27th day of July, 1905; the complainant alleging that it is the owner of the lands described in the bill, setting forth particularly the chain of title, and that the defendants claim an adverse estate or interest in the premises, which said claim so affects the complainant's title as to render a sale or other disposition of the property impossible, and disturbs the complainant in the right of possession. It prays that said claims of the defendants, and each of them, be adjudged to be invalid, and that none of the defendants have any estate or interest in the said property, or any part thereof, and for a perpetual injunction against the defendants, and for general relief.

The defendants G. R. Westfeldt, P. M. Westfeldt, Marie Christine Price, Jennie Westfeldt, L. P. Tarlton, and wife, Meta Tarlton, Jennie Fleetwood Westfeldt, G. S. Tennent and wife, and Marie Louise Ten-

ent filed a joint and several answer to the bill, in which they set up the following defenses: (1) They denied that the complainant was the owner of the property, and denied that the property was located where the complainant claimed it to be, and denied that the ridge on which the complainant claimed its land to be located was known as and called "Little Fork Ridge," and averred that Little Fork ridge was at a different place, and that the complainant was endeavoring to locate its lands as claimed by it for the purpose of covering certain lands belonging to the defendants, because such lands were believed to contain a certain copper deposit and to be of much value, and that the defendants are seised of the land as belonging to them in fee simple. And the answer then sets up particularly the defendants' chain of title. (2) The defendants further set up in their answer that about the year 1899 one Walter S. Adams went into possession of that portion of the land covered by one of the grants under which the defendants claim, and began to dig and mine for copper and other ore, and continued in possession until March 20, 1901, when the defendants G. R. Westfeldt and P. M. Westfeldt, as individuals and as executors of the will of Jane Westfeldt, and the other defendants and Chas. Fleetwood Westfeldt, commenced an action in the superior court of Swain county, N. C., for the purpose of recovering from Adams the possession of the land. The defendants then set up the pendency of the action in the state court as a bar to this suit, and also insist that by reason of the pendency of that action this court has no jurisdiction. The defendants introduced in evidence in the case, when the matter of jurisdiction was argued before the court, a complete transcript of the record of the cause in the state court. (3) The defendants also set up that the defendants Henry Grinnell and wife and Dodette Altonie Grinnell were citizens of the District of Columbia, and were necessary parties to this suit, and therefore this court had no jurisdiction of this cause. (4) The defendants also set up in their answer that this court has no jurisdiction sitting in chancery as a court of equity for the reason that the remedy of the plaintiff is full, complete, and adequate at law. (5) That the bill of complaint does not state facts sufficient to constitute a cause of action, for that it nowhere appears therein, and is not the fact, that the plaintiff has established by any action at law any right or title to said land, or the possession thereof. The defendants also claim the right of trial by jury. The defendants also say that the bill of complaint does not state any facts which show that the complainant is entitled to any equitable relief whatever, or that the matters involved in the suit are cognizable in a court of equity. (6) The pendency of the suit in the state court is again set up in the answer, and claimed to be a reason why this court should not grant an injunction against further proceedings by the defendants in the state court.

The defendants Henry Grinnell and wife filed a separate answer, which contained substantially the same that was in the answer of the other defendants, and prayed that the court dismiss the bill as to them.

After the complainant had filed a general replication, the defendants requested the court for leave to be heard upon the question of jurisdiction of the court before an order should be made appointing an examiner to take evidence. The court granted the request, and heard

argument upon the motion of the defendants to dismiss for want of jurisdiction, but denied the motion, except as to Grinnell and wife, as to whom, and before the final hearing in the case, the bill was dismissed because of a want of jurisdiction of the court over their persons.

In the progress of the final hearing it appeared that the complainant at the commencement of the suit had only an equitable title to the property in dispute; the conveyance under which it claimed being without seals, but in all other respects sufficient. Before the hearing was concluded the said conveyance was amended, re-probated, and re-registered, so as to make it a perfect conveyance of the legal title to the complainant, and was again offered in evidence and received by the court, and, in addition, the complainant obtained from its vendors another deed, which it had probated and registered, and which it offered in evidence, conveying the lands to the complainant.

The defendants filed a formal written motion to dismiss the suit on the ground that the complainant at the commencement of the suit did not have the legal title to the land, which motion the court overruled.

The evidence was taken before examiners, and at the final hearing there were many exceptions to the same on behalf of complainant and defendants, some of which were abandoned, and those not abandoned were passed upon by the court, as will appear in the record.

The demurrer in the defendants' answer avers that the bill does not state facts sufficient to constitute a cause of action. The court has considered the same, and is of the opinion that the allegations contained in the bill are a substantial compliance with Acts 1893, p. 37, c. 6 (Revisal 1905, § 1589); and in addition thereto the bill shows that the complainant is in the actual possession of the premises in dispute. Therefore the demurrer is overruled. Jones v. Ballon, 130 N. C. 527, 52 S. E. 254; Reynolds v. Crawfordsville Bank, 112 U. S. 411, 5 Sup. Ct. 213, 28 L. Ed. 733; More v. Steinback, 127 U. S. 70, 8 Sup. Ct. 1067, 32 L. Ed. 51; Ely v. New Mexico R. Co., 129 U. S. 291, 9 Sup. Ct. 293, 32 L. Ed. 688.

The defendants set up the pendency of an action in the state court as a bar to this suit, and also insisted that by reason of the pendency of such action this court had no jurisdiction. In considering this question it is necessary to determine the character of the action pending in the state court. The parties who are defendants in the present suit instituted an action in the state court to recover the two tracts of land in controversy in this proceeding. There is nothing in the proceedings in that court to show that the court has taken possession of the res, or that it has, by proper process, assumed dominion over any specific property, the title of which is involved in this controversy. In the case of Slaughter v. Mallet Land & Cattle Co. (Circuit Court of Appeals, 5th Circuit) 141 Fed. 282, 72 C. C. A. 430, this question was considered by the court. The third headnote in that case is as follows:

"The pendency in a state court of an action of trespass to try title to land and to remove cloud from title does not place the land in the exclusive possession of that court, in such sense that it is a ground for abatement of a subsequent suit in a federal court between the same parties to quiet title to the same land."

The defendants' suit in the state court against complainant and its vendor was an action under the Code of North Carolina for the recovery of real property, and answered to the old action of ejectment, and was an action at law purely. The defendants in that suit or action set up a counterclaim, asking to have their title quieted under the act of 1893; but no action was ever taken upon this counterclaim. The plaintiffs in that action (defendants in this suit) filed no reply to the counterclaim, but at the close of this hearing what is styled a "reply" was offered in evidence. There was nothing to show that the state court had granted leave to file a reply, or that any reply had ever been offered in the state court. There was nothing to show that the land had ever been taken into the custody of the state court in any manner. This paper was ruled out as evidence.

In the case of Barber Asphalt Pavement Co. v. Morris, 132 Fed. 947, 66 C. C. A. 55, 67 L. R. A. 761, the court, in discussing this phase of the question said:

"The general rule upon this subject has been so clearly announced and so often affirmed by the Supreme Court and by this court that it is no longer open to debate or consideration. It is that the pendency in a state court of an action brought by the plaintiff in a subsequent action between the same parties in the federal court, and which involves the same subject-matter, presents no bar and furnishes no ground for the abatement of the later action. Stanton v. Embrey, 93 U. S. 548, 554, 23 L. Ed. 983; Standley v. Roberts, 59 Fed. 836, 844, 8 C. C. A. 305, 314; Merritt v. Barge Co., 79 Fed. 228, 233, 24 C. C. A. 530, 535; Green v. Underwood, 86 Fed. 427, 429, 30 C. C. A. 162, 164; Hughes v. Green, 28 C. C. A. 537, 539, 84 Fed. 833, 835; Hubinger v. Trust Co., 36 C. C. A. 494, 496, 94 Fed. 788–790; City of Ogden v. Weaver. 108 Fed. 564–568, 47 C. C. A. 485–492; B. & O. R. R. Co. v. Wabash R. Co., 57 C. C. A. 322, 119 Fed. 678–680; Ball v. Tompkins (C. C.) 41 Fed. 486–490. * * * *"

Owing to the nature of the action instituted in the state court. this court. being of the opinion that there was no conflict of jurisdiction, therefore refused to grant the motion to dismiss this suit for the reasons thereinbefore stated.

It was also insisted that the defendants Henry Grinnell and his wife, Dodette Altonette Grinnell, were citizens of the District of Columbia and necessary parties to this suit, and that therefore this court had no jurisdiction of the same. It was alleged in the bill that these defendants were citizens of the District of Columbia. It thus appearing at the preliminary hearing that the court was without jurisdiction, counsel for complainant were advised by the court that the suit would be dismissed, whereupon they stated that they were prepared to show that such defendants were citizens of the state of Massachusetts, and would offer evidence to that effect, and in such event would ask leave to amend the bill in conformity thereto, and at the same time requested the court to grant leave to complainant to take a discontinuance as to these defendants in the event that they should be unable to show that such defendants resided within the jurisdiction of this court. When this cause came on for final hearing complainant asked to be permitted to take a discontinuance or nonsuit as to Grinnell and wife. This motion was granted over objection of counsel for defendants.

The order permitting complainant to take a discontinuance as to these two defendants involves two questions: First, the power of the court to make the order; and, second, the same being made, whether the defendants Grinnell and wife are indispensable parties. This question has been passed upon by the Circuit Court of Appeals for the Eighth Circuit in the case of Boatman's Bank v. Fritzlen, 135 Fed. 658, 68 C. C. A. 288. The court in that case, in discussing this phase of the question, among other things, said:

"* * * In a determination of the jurisdiction of the national courts, and the right to remove causes of action to them, indispensable parties only should be considered, because all other parties may be dismissed and disregarded, if their presence would oust or restrict the jurisdiction or the right. Geer v. Mathieson Alkali Works, 190 U. S. 428–432, 23 Sup. Ct. 807, 47 L. Ed. 1122; Bacon v. Rives, 106 U. S. 99, 1 Sup. Ct. 3, 27 L. Ed. 69; Wormley v. Wormley, 8 Wheat. 421, 5 L. Ed. 651; Wood v. Davis, 18 How. 467, 15 L. Ed. 460; Sioux City Terminal R. & W. Co. v. Trust Co. of North America, 82 Fed. 124, 27 C. C. A. 73."

In this case, the court has jurisdiction of the subject-matter and the parties, and therefore the bill may be dismissed as to any defendant who is not an indispensable party to the suit, and retained as to other defendants. Horsford v. Gudger (C. C.) 35 Fed. 392; Payne v. Hook, 7 Wall. 430, 19 L. Ed. 260; Carneal v. Bank, 10 Wheat. 188, 6 L. Ed. 297; Vattier v. Hinde, 7 Pet. 261, 8 L. Ed. 675; Horn v. Lockhart, 17 Wall. 579, 21 L. Ed. 657. The court having jurisdiction of the subject-matter as well as the parties, except the two defendants who are citizens of the District of Columbia, it would be unreasonable to hold that the complainant is without a remedy simply because two of the defendants are not within the jurisdiction of the court, and this can never happen, except where the absent defendant is an indispensable party; and, in order to secure the due administration of justice in such cases, this exception should be remedied by appropriate legislation framed so as to provide for service on defendants residing in the District of Columbia and the territories, although it should involve an amendment to the Constitution.

In determining whether these defendants are indispensable parties, the proper test is whether, in this suit, a decree can be entered without affecting the interests of the defendants beyond the jurisdiction of the court. It cannot be seriously contended that a decree of this court declaring the complainant to be the owner of the lands in controversy and restraining the other defendants from asserting title to the same could in the slightest degree affect any claim which the defendants Grinnell and wife may have to an interest in the property. If the claims of Grinnell and wife were so interwoven with those of the other defendants that no decree could be made by this court without affecting their rights, then, of course, they would be indispensable parties, and this court would be without jurisdiction.

In the case of Alred v. Smith, 135 N. C. 443, 47 S. E. 597, 65 L. R. A. 924, this question was considered by the Supreme Court of North Carolina, and in discussing this phase of the question, on page 452 of 135 N. C., and page 601 of 47 S. E. (65 L. R. A. 924), the court said:

"In respect to title, interest, or estate to or in the common tenement they are strangers, and no act done by one can affect, inure to the benefit of, or injure the other. * * * In respect to the title no act by one can affect the other. * * * It would be an anomaly in the law if one tenant in common could, by matter in pais, deed, or record, estop his co-tenant in respect to his title, in regard to which they are absolute strangers. * * *"

Also, in the case of Williams v. Crabb, 117 Fed. 193, 54 C. C. A. 213, 59 L. R. A. 125, it was held that in a suit in equity by one of two heirs at law of a decedent to set aside a will and a deed executed by such decedent for fraud or undue influence and to recover complainant's share of the property the other heir was not an indispensable party, and that the federal court would not require his joinder as a party where it would oust the jurisdiction of the court. In this case, on page 205 of 117 Fed., and page 225 of 54 C. C. A. (59 L. R. A. 425), the court quotes with approval from the case of Elmendorf v. Taylor, 10 Wheat. 152, 6 L. Ed. 289, in which Chief Justice Marshall, who delivered the opinion of the court, said:

"It is contended that he [plaintiff] is a tenant in common with the others. and ought not to be permitted to sue in equity without making his co-tenants parties to the suit. This objection does not affect the jurisdiction, but addresses itself to the policy of the court. Courts of equity require that all the parties concerned in interest shall be brought before them, that the matter in controversy may be finally settled. This equitable rule, however, is framed by the court itself, and is subject to its discretion. It is not, like the description of parties, an inflexible rule, a failure to observe which turns the party out of court because it has no jurisdiction over his cause, but, being introduced by the court itself for the purpose of justice, is susceptible of modification for the promotion of these purposes. In this case the persons who are alleged to be tenants in common with the plaintiffs appear to be entitled to a fourth part, not of the whole contract, but a specially described portion of it, which may or may not interfere with the part occupied by the defendant. Neither the bill nor the answer alleges such an interference, and the court ought not, without such allegation, to presume it."

It is also insisted that the bill of complaint does not state facts sufficient to constitute a cause of action, in that it is not alleged that the plaintiff has established in an action at law any right or title to the land in controversy or the possession thereof. This contention under the circumstances, is untenable. The complainant invokes the jurisdiction of this court, and seeks to assert its rights under the provisions of the North Carolina statute (chapter 6, p. 37, Laws 1893), section 1 of which reads as follows:

"That an action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claim."

The foregoing statute provides for the enlargement of equitable rights. While the Legislature of a state cannot enlarge the equitable jurisdiction of the courts of the United States, at the same time it may by legislative enactment provide for the enlargement of equitable rights, and such rights may be enforced by the Circuit Court of the United States by virtue of its equitable jurisdiction, in the same manner as such rights are enforced in the state courts. This is so from the very nature of things. It would be inconsistent to hold that a citizen of the state of North Carolina under the laws of that state

would be entitled to go into the state court and seek the enforcement of certain equitable rights, while, on the other hand, a citizen of another state who is entitled to go into a Circuit Court of the United States within the same territory would be denied the privilege of enforcing a right thus conferred upon the citizens of the state wherein the action is brought.

In the case of Davis v. Gray, 16 Wall. 221, 21 L. Ed. 447, in discussing this question, the court said:

"A party by going into a national court does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality. The wise policy of the Constitution gives him a choice of tribunals."

Also in the case of Ex parte McNiel, 13 Wall. 243, 20 L. Ed. 624, the court said:

" * * * This principle may be laid down as axiomatic in our national jurisprudence. A party forfeits nothing by going into a federal court. * * * "

The court, in the case of Broderick's Will, 21 Wall. 503, 520, 22 L. Ed. 599, declared that:

"Whilst it is true that alterations in the jurisdiction of the state courts cannot affect the equitable jurisdiction of the Circuit Courts of the United States, so long as the equitable rights themselves remain, yet an 'enlargement of the equitable rights may be administered by the Circuit Courts, as well as by the courts of the state."

In the case of Darragh v. Wetter Mfg. Co., 78 Fed. 13, 23 C. C. A. 609, the court, among other things, said:

"In Clark v. Smith, 13 Pet. 195, 202, 10 L. Ed. 123, a suit in equity in the federal court, under a state statute, was maintained by a party in possession of real estate to cancel a junior patent, although this statute dispensed with the rule in equity that the title of the complainant must first be established at law. In Holland v. Challen, 110 U. S. 15, 25, 3 Sup. Ct. 495, 28 L. Ed. 52, a bill to quiet title to land in Nebraska, brought in the federal court by a complainant out of possession, was maintained under a statute of that state, although that statute dispensed with the equity rule that one must have established his title at law, and must be in possession, in order to maintain such a suit.

"In Cummings v. Bank, 101 U. S. 153, 157, 25 L. Ed. 903, the statute of a state had given to property holders the right to enjoin the payment of an illegal tax; and, in discussing the right of the complainant to maintain a suit in the national courts for that purpose, Mr. Justice Miller said:

" 'We have also held that where a statute of a state created a new right, or provided a new remedy, the federal courts will enforce that right either on the common-law or equity side of its docket, as the nature of the new right or new remedy required.'

"In Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, 33 L. Ed. 909, the Supreme Court sustained a suit in equity brought in the federal court under chapter 116, Rev. St. Ill. 1881, commonly called the "Burnt Records Act," by one out of possession of real estate, to establish his title, and to recover the possession of the property of the defendant, and granted the relief he sought, notwithstanding the earlier decision in Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873. In this case the Supreme Court again declared that:

" 'An enlargement of equitable rights by state statute may be administered by the Circuit Courts of the United States, as well as by the courts of the state, and when the case is one of a remedial proceeding, essentially of an equitable character, there can be no objection to the exercise of the jurisdiction.'

"Finally, in Cowley v. Railroad Co., 159 U. S. 569, 582, 16 Sup. Ct. 127, 40 L. Ed. 263, a case is reported in which a suit had been brought in one of the courts of Washington Territory to set aside the judgment of that court for fraud under a territorial statute which authorized the territorial court to vacate its judgments in original suits of this character brought for that purpose. The suit was transferred to the federal court and there cited; but the Circuit Court dismissed the bill on the ground that it was not according to equity practice to vacate or act directly upon a judgment at law, that the complainant should have applied by petition or motion to set aside the judgment in the original cause, and that his remedy at law was plain and adequate. The Supreme Court reversed that decree. Mr. Justice Brown delivered the unanimous opinion of the court, in which he announces the same rules, and cites the same authorities which he had so vigorously presented in his dissenting opinion in Cates v. Allen, 149 U. S. 451, 461, 13 Sup. Ct. 883, 977, 37 L. Ed. 804. In speaking of this suit he said:

" 'Even if it were treated as in form a bill in equity, the right of the complainant would be gauged as well by the statute under which the bill was filed as by the general rules of equity jurisprudence. * * * While the federal court may be compelled to deal with the case according to the forms and mode of proceeding of a court of equity, it remains, in substance, a proceeding under the statute, with the original rights of the parties unchanged.'

"Upon a careful review of all these authorities, and especially in view of the decisions in the last two cases to which we have adverted, it may, we think, be safely said that the following rules relative to the jurisdiction and power of the federal courts to enforce rights created, and to administer remedies provided, by state statutes for enforcement and administration in the courts of the states, have been firmly established in the jurisprudence of the United States: Rights created or provided by the statutes of the states in the federal courts, either at law, in equity, or in admiralty, as the nature of the new rights may require. Ex parte McNiel, 13 Wall. 236, 20 L. Ed. 624; Cummings v. Bank, 101 U. S. 153, 157, 25 L. Ed. 903; Trust Co. v. Krumseig (decided by this court at May term, 1896) 77 Fed. 32, 23 C. C. A. 1. An enlargement of equitable rights by the statutes of the states may be administered by the national courts, as well as by the courts of the states. Case of Broderick's Will, 21 Wall. 503, 520, 22 L. Ed. 599; Clark v. Smith, 13 Pet. 195, 202, 10 L. Ed. 123; Holland v. Challen, 110 U. S. 15, 25, 3 Sup. Ct. 495, 28 L. Ed. 52; Frost v. Spitley, 121 U. S. 552, 557, 7 Sup. Ct. 1129, 30 L. Ed. 1010; Reynolds v. Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733; Chapman v. Brewer, 114 U. S. 158, 170, 171, 5 Sup. Ct. 799, 29 L. Ed. 83; Gormley v. Clark, 134 U. S. 338, 348, 349, 10 Sup. Ct. 554, 33 L. Ed. 909; Bardon v. Improvement Co., 157 U. S. 327, 330, 15 Sup. Ct. 650, 39 L. Ed. 719; Cowley v. Railroad Co., 159 U. S. 569, 583, 16 Sup. Ct. 127, 40 L. Ed. 263. 'A party, by going into a national court, does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality.' Ex parte McNiel, 13 Wall. 236, 20 L. Ed. 624; Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447; Cowley v. Railroad Co., 159 U. S. 569, 583, 16 Sup. Ct. 127, 40 L. Ed. 263."

The contention of defendants' counsel in this respect would be correct if there were no statutes in North Carolina relating to the subject. However, the Legislature of that state has by legislative enactment conferred additional equitable rights, which are now sought to be enforced by complainant in this suit. The case of Arrington v. Arrington, 114 N. C. 119, 19 S. E. 278, is also relied upon as authority for the contention that the complainant is not entitled to relief in this suit, because it is not alleged that it was the legal owner of the land in controversy at the time that the suit was instituted. A careful analysis of that case shows that, instead of sustaining the contention of the defendant, it rather tends to support the theory advanced by the complainant.

Among other things, the court, in discussing the admissibility of testimony, said:

"The evidence which had been admitted, the mortgage of 1890, showed that when the plaintiff began her action she did not have the legal title to the 1½-acre tract, but only an equitable title thereto, to wit, an equity of redemption. The proffered and excluded evidence tended to show that the plaintiff, between the commencement of the action and the trial, had lost her equitable title, and then had no right whatever to the possession of that tract. It should not have been excluded; for, in an action to recover land, the rule is the plaintiff must have the right to the possession, not only at the institution of the suit, but at the time of trial also. * * *"

In that case it appears that, although the plaintiff possessed an equitable title at the time of the commencement of the action, she had lost the same between the time of the commencement of such action and the trial thereof. The court held that, not being in possession of the equitable title at the time of the trial, she did not have the right of possession, and was not therefore entitled to recover. In the case of Arrington v. Arrington, supra, the case of Geer v. Geer, 109 N. C. 679, 14 S. E. 297, is quoted with approval, and in that case it was distinctly held that one may recover in an action of ejectment on an equitable title. In the controversy between the parties to this suit in the state court (Westfelt v. Adams, 131 N. C. 379, 42 S. E. 823) it was held that the plaintiff was entitled to recover on a deed made by an assignee in bankruptcy which did not contain a seal, and in that case Geer v. Geer, supra, is also quoted with approval.

In the case of Dewing et al. v. Woods, 111 Fed. 575, 49 C. C. A. 443, Judge Goff said:

"It was alleged in the bill that complainant had a fee-simple title to the land in controversy, and that he was in possession of the same. The record shows that complainant did not when the bill was filed, and does not now, have the legal title to the land, and it is therefore entirely unnecessary that we consider the matter of possession. * * *"

The learned judge who wrote the opinion in that case clearly states the rule as it applies in states like West Virginia, where there is no local statute which provides for the enlargement of equitable rights. However, in that case, the court, among other things, said:

"The record shows that complainant did not when the bill was filed, and does not now, have the legal title to the land. * * *"

The use of the foregoing language justifies the inference that the court deemed it necessary either that complainant should have had title to the land at the time of the commencement of the action, or should have had the same at or before the final decree, to entitle him to the relief demanded. It should also be remembered that the case of Dewing et al. v. Woods, supra, was a suit to quiet title, and that a legal title was necessary in order to entitle the complainant to a decree.

The bill alleges that complainant was in possession of the lands in controversy when the suit was begun, and is still in possession of the same. The complainant's possession is admitted in the third paragraph of the answer, and it is also shown by several witnesses that its possession began in 1899. But even though there was no proof as to possession, except that the possession began in 1899 and that Adams con-

veyed the premises in 1901, there would be a presumption that the possession thus shown continued and continues under Adams and those claiming under him. Lazarus v. Phelps, 156 U. S. 205, 15 Sup. Ct. 271, 39 L. Ed. 397. In the case of Reynolds v. Crawfordsville Bank, supra, among other things, it was held that the complainant, being vested with a clear equitable title to the premises in controversy, was entitled under the Indiana statute to a decree. The provisions of this statute are practically the same as those of the North Carolina statute.

The case of Wehrman v. Conklin, 155 U. S. 324-325, 15 Sup. Ct. 129, 39 L. Ed. 167, was where a suit was instituted to quiet title under the Iowa statute, a statute substantially the same as the North Carolina statute. It was held:

"It will be observed that this statute enlarges the jurisdiction of the courts of equity in the following particulars: First. It does not require the plaintiff to have been annoyed or threatened by repeated actions of ejectment. Second. It dispenses with the necessity of his title being previously established at law. Third. A bill may be filed by a party having an equitable as well as a legal title. Fourth. In some states it is not even necessary that the plaintiff should be in possession of the land at the time of the filing of the bill. These statutes have generally been held to be within the constitutional power of the Legislature."

Also, on pages 324, 325 of 155 U. S., and page 133 of 15 Sup. Ct. (39 L. Ed. 167), in discussing the extent to which the federal courts have gone in the enforcement of equitable rights conferred by state statutes, it is said:

"Another step in the direction was taken in Reynolds v. Crawfordsville Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733, in which a bill was sustained on an equitable title, although it would appear from a report of the case that such title was not fortified by actual possession."

At the final hearing it appeared that the plaintiff at the time of the commencement of the suit had only an equitable title to the property in dispute; the conveyance under which it claimed being without seals, but in other respects sufficient. However, before the hearing was concluded, the conveyance was amended, re-probated, and re-registered, so as to make it a perfect conveyance of the legal title to the complainant, and again offered in evidence, and admitted as such, and in addition the complainant obtained from its vendor another deed, which it had probated and registered, and which was admitted in evidence, conveying the land to the complainant. Whereupon the defendants offered a formal written motion to dismiss the suit on the ground that the complainant at the time of the institution of the suit did not have a legal title to the land. This motion was denied. The deed as originally filed was not under seal, but it purported upon its face to be a perfect conveyance in all respects, except the scrolls at the ends of the names of the signers. While not a deed in the technical sense of the term, at the same time it had the effect to convey a perfect equitable title. In the case of Rutherford v. Green, 37 N. C. 126, it is said:

" * * * But if he could at law, it is the settled principle of equity that a valid contract for the conveyance of land is, in itself, an equitable conveyance, whereby the person to whom it is given is regarded in equity as a complete owner, and is entitled at any time to call for a legal conveyance, whereby he may become legal owner also. * * * "

Phillips v. Davis, 69 N. C. 119, is to the same effect.

There was no objection to the introduction of any of the deeds, except the one herein referred to, and in that instance the objection was based upon the ground that it was not properly registered. However, defendants' counsel reserved the right to object to the effect of the same on account of the defects in the deeds originally introduced. This defect was remedied by a re-registration during the hearing. Hudson v. Jordan, 108 N. C. 12, 12 S. E. 1029; Cawfield v. Owens, 129 N. C. 286, 40 S. E. 62. Although the complainant would have been entitled to a decree upon his equitable title, as shown by the deed introduced in the first instance, to which no seals were attached, at the same time, having introduced a perfect legal title to the lands in controversy during the pendency of the suit, this presents the case of one being possessed with an equitable title at the commencement of the suit and with a perfect legal title at the final hearing, which, in either view of the case, would give complainant a standing in court. The chain of title was complete in all respects down to Adams, and there was an admission in the answer to the effect that Adams and wife conveyed the property in controversy to the complainant. This admission on the part of the defendants practically takes this matter out of the realm of controversy. However, the Circuit Court of Appeals (Sixth Circuit), in the case of Reeves v. N. C. Land & Timber Co., 141 Fed. 821, 72 C. C. A. 287, considered this, among other questions, in a well-prepared opinion delivered by Lurton, Circuit Judge, in which, among other things, it is said:

"Finally, it is said that a complainant cannot acquire a title pending his suit, and bring it forward by supplemental bill. That is not this case. The complainants had an imperfect, but inchoate, title when they brought this suit. They simply perfected the existing title. * * *"

It is also insisted that the complainant has an adequate and complete remedy at law. This contention cannot be maintained. The bill shows that the complainant was in the actual possession of the premises in controversy at the time suit was instituted, that it was and still is in the actual possession, and, therefore, cannot maintain an action at law in this court. While it is insisted that the complainant might have a remedy at law in the state court, at the same time, under the circumstances, this court will not refuse to entertain jurisdiction in cases like the one at bar. The court, in the case of United States Life Ins. Co. v. Cable, 98 Fed. 761, 39 C. C. A. 264, among other things said:

"In the federal courts it is well settled that the court will not turn a suitor in equity over to a remedy at law in the state court, but only on the law side of the federal court."

This court, having jurisdiction of the subject-matter as well as the parties, will proceed to hear and determine the questions involved, either in equity or on the law side of the docket, according to the pleadings and evidence.

It is insisted by counsel for defendants that the grants under which complainant claims title, not being registered within two years from the date of the issuance of the same, are void under section 2779 of the Code of North Carolina, which reads as follows:

"The Secretary, on application of claimants, shall make out grants for all surveys returned to his office, which grants shall be authenticated by the Governor, countersigned by the Secretary and recorded in his office. The date of the entry shall be inserted in every grant, and no grant shall issue upon any survey, unless the same be signed by the surveyor of the county; and every person obtaining a grant for land shall, within two years after such grant shall be perfected as aforesaid, cause the same to be registered in the county where the land shall lie; and any person may cause to be there registered any certified copy of a grant from the office of the Secretary of State, which shall have the same effect as if the original had been registered. Upon certificate from the entry-taker, that the claimant has assigned his interest under the entry, a grant shall be issued in the name of the assignee: Provided, that the said assignee is a citizen and resident of this state, or shall have come into the state with the bona fide intent of becoming a resident and citizen thereof."

There is nothing in the foregoing section which can be construed as authority for the contention that the failure to register a senior grant within two years from the date of the issuing of the same renders such grant void. However, this question has been passed upon recently by the Supreme Court of North Carolina. Judge Connor, in a very able and exhaustive opinion in the case of Janney v. Blackwell, 138 N. C. 439, 50 S. E. 857, among other things, in discussing this question, says:

"By making the entry as prescribed by law the enterer does not acquire any title to the land, but only a 'pre-emption' right, or, as it is sometimes called, an 'inchoate equity,' or right to call for a grant upon compliance with the statute. The grant, when issued, relates to the entry, and vests the title in the grantee. The land, when granted, is no longer subject to entry as 'vacant and unappropriated lands.' Featherston v. Mills, 15 N. C. 596; Hoover v. Thomas, 61 N. C. 194; State v. Bevers, supra; Newton v. Brown, 134 N. C. 439, 46 S. E. 994. It follows, therefore, that, if one lay an entry upon and procure a grant for land covered by a grant, he acquires no title thereto, for the reason that the state has by the senior grant parted with its title. Stanmire v. Powell, 35 N. C. 312. If the land be open to entry, and a grant be issued therefor, such grant may not be attacked collaterally for fraud, irregularity, or other cause. This can be done only by the state,' or by pursuing the provisions of section 2786 of the Code. But, if the land be not subject to entry, the grant is void, and may be attacked collaterally. Prior to 1885 the statutes provided that all grants, deeds, etc., be registered in the county wherein the land was situated within two years from the date thereof. With one or two omissions, the Legislature uniformly extended the time for registration for two years. This court with equal uniformity held that such instruments, when registered within two years from their date or within the extended period, were good and valid for all purposes from their date by relation. Referring to grants, it was held in Hill v. Jackson, 31 N. C. 333, that 'the passage of the acts * * * prolonging the time within which grants shall be registered in the county has practically the effect of rendering nugatory that clause in them. * * * The grants then may be registered at any time, if at that time there be any law authorizing the act. * * * If the registration of the grant was legal, then it must have the effect of relating back. This is a necessary consequence, and daily recognized in our practice.'

"The same doctrine prevailed in regard to deeds. Walker v. Coltraine, 41 N. C. 79; Phifer v. Barnhart, 88 N. C. 333. At the session of 1885 the Legislature enacted a statute which worked a radical change in regard to the registration of deeds. Chapter 147, p. 233, Laws 1885, declares that no deed, etc., shall be valid at law to pass any property as against creditors or purchasers for value, but from registration. No time was fixed within which such instruments were to be recorded. From that time it became unnecessary to pass the usual act extending the time for registration of deeds. The Legislature at that session and until 1893 failed to extend the time for registering grants. In Wyman v. Taylor, 124 N. C. 426, 32 S. E. 740, this court held that

chapter 147, p. 233, Laws 1885, did not apply to grants; hence from 1885 until 1893 there was no statute in force in this state authorizing the registration of grants after the expiration of two years from their date. By section 2779 of the Code they were required to be registered within two years. During the period between 1885 and 1893 there was no statute in force permitting the plaintiff to register the grant.

"By chapter 40, p. 52, Laws 1893, it was provided that grants theretofore made, which were required to be registered, 'may be registered in the counties in which the lands lie respectively at any time or times within two years from the first day of January, 1894, next ensuing, notwithstanding the fact that such specified times have already expired, and all such grants heretofore registered after the expiration of such specified time or times shall be taken and treated as if they had been registered within such specified time or times; provided that nothing herein contained shall be held or have the effect to divest any rights, titles, or equities, in or to the land covered by such grants, or any of them, acquired by any person or persons from the state of North Carolina, by or through any entry or entries, grant or grants made or issued since such grants were respectively issued, or of those claiming through or under such subsequent entry or entries, grant or grants.' The plaintiffs insist that the language of the proviso prevents the operation of the senior grant from relating back to its date, and gives the grant of 1876, under which they claim, priority. The question is thus presented: What 'right, title, or equity' did the grant of 1875 confer upon the grantee? As we have seen, the land at the time of the issuing of the grant was not subject to entry, and therefore the grantee acquired no right, title, or equity in the land as against the prior grantee. . It is well settled that, where language is used in a statute which has a well-defined legal meaning, the Legislature will be presumed to have used the language with reference to such meaning. The plaintiff must therefore establish the proposition that he had some legal right or title to the land or some equity therein by virtue of his grant. It is not to be doubted that the Legislature had the power to impose upon the persons registering their grants after the time provided therefor had expired the condition that they should do so, subject to junior grants which had been registered. The registration of a grant is not necessary to give it validity for the purpose of passing title. 24 A. & E. Enc. (2d Ed.) 116. It will be noted that there. is a marked difference in the language of the statute requiring the registration of deeds (section .1245, and Acts 1885, p. 233, c. 147), and that requiring the registration of grants. The first declares that 'no deed shall be good and available,' where as the second directs that the grant be recorded.

. We therefore conclude that, in view of the facts set out in the record, the plaintiff had not, at the time of the registration of the grant of 1848, acquired by the grant of 1875 any "right, title, or equity," as against the senior grant, which gave it priority. Neither grantee had actual possession of the land. The legal title vesting in the first grantee drew the constructive possession, which continued until there was an ouster. It appears that the plaintiff had never taken possession. Therefore the possession is, by operation of law, in the defendant by virtue of the senior grant. It may be suggested that the construction which we have placed upon the proviso of the act of 1893 practically emasculates it—gives it no operative force. If the defendant had gone into actual possession of the land, thereby ousting the senior grant, and remained in possession for seven years, he would have acquired title."

This opinion effectually disposes of the question sought to be raised by the defendants. It will be observed that the court in that case holds that junior grants are void in the absence of an actual adverse possession of the disputed premises for a period of seven years. While this court is of opinion that the act of 1893 is retrospective, and had the effect of validating any grants that were invalid by virtue of section 2779 of the Code at the same time the Supreme Court of North Caro-

lina, in the case of Janney v. Blackwell, supra, has practically decided that the act of 1893 was not necessary for such purpose. In this instance, the complainant not only holds under senior grants, but has been in possession since 1899; while, on the other hand the defendants hold under junior grants, and have never been in posse: 'n of the premises. Therefore the junior grants, under the circumstances, are absolutely void and of no effect. This question being settled by the Supreme Court of the state of North Carolina, and this suit being instituted in that state, such decision is binding on this court.

This practically disposes of all legal questions involved in this controversy, and leaves nothing but the question of location of the lands in controversy. The court, after a careful consideration of all the evidence in this cause, is of opinion that the complainant is entitled to the relief prayed for in the bill, and will therefore enter a decree to that effect.